Filed 6/30/10          NO. 4-09-0118

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| In re: RODNEY S., a Minor, | ) | Appeal from |
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Circuit Court of |
|          Petitioner-Appellee, | ) | Logan County |
|          v. | ) | No. 08JD21 |
| RODNEY S., | ) | |
|          Respondent-Appellant. | ) | Honorable |
| | ) | Charles M. Feeney, |
| | ) | Judge Presiding. |

_____

JUSTICE STEIGMANN delivered the opinion of the court:

On September 10, 2008, the State filed a petition for adjudication of wardship as to respondent, Rodney S. (born April 23, 1998), asserting that he was a delinquent minor pursuant to section 5-105(3) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/5-105(3) (West 2008)). Specifically, the State alleged that on his way home from school, 10-year-old Rodney committed two counts of aggravated battery (720 ILCS 5/12-4(b)(8), (b)(18) (West 2008)) against his bus monitor.

Following an October 2008 bench trial, the trial court (1) found Rodney guilty of both counts of aggravated battery and (2) adjudicated Rodney a delinquent minor. In January 2009, the court placed Rodney in the custody of the Department of Children and Family Services (DCFS) and sentenced him to probation "until [he] attains 21 years of age."

Rodney appeals, arguing that (1) he was denied his right to counsel because his court-appointed lawyer acted as both his trial attorney and guardian ad litem; (2) this court should

order the trial court to amend its order of adjudication to reflect one count of aggravated battery pursuant to the one-act, one-crime rule; and (3) his sentence is (a) void and (b) excessive. Because we agree that (1) under the one-act, one-crime rule, one of the trial court's delinquency findings entered against Rodney should be vacated and (2) Rodney's sentence is void, we affirm in part, vacate in part, and remand with directions.

## I. BACKGROUND

### A. The State's Petition for Adjudication of Wardship

On September 10, 2008, the State filed a petition for adjudication of wardship as to Rodney, asserting that he was a delinquent minor pursuant to section 5-105(3) of the Juvenile Court Act (705 ILCS 405/5-105(3) (West 2008)). The State alleged that prior to his seventeenth birthday, Rodney committed two counts of aggravated battery (720 ILCS 5/12-4(b)(8), (b)(18) (West 2008)) by making contact of an insulting and provoking nature with his bus monitor, Scott Lindley. The charges were based, respectively, on the State's allegation that Rodney committed battery (1) on public property--namely, a school van on a public roadway (720 ILCS 5/12-4(b)(8) (West 2008))--and (2) upon a school employee in the performance of his duties (720 ILCS 5/12-4(b)(18) (West 2008)). Following a September 25, 2008, hearing on the State's petition, the trial court appointed an attorney to represent Rodney.

B. Rodney's October 2008 Bench Trial

Lindley testified that as an employee of the Mount Pulaski school district, he was charged with escorting students to and from school. (The school district apparently employed Lindley to ride in a van--which was driven by another school district employee--to assist students who needed additional help or supervision to get to and from school.) Lindley said that Rodney acted appropriately on the way to school but that problems arose on the ride home. Specifically, Lindley gave the following account of the incident that led to the petition for adjudication of wardship in this case.

> "[LINDLEY:] *** [T]he driver *** went out and got the note ***. [(Apparently, the school had sent a note home with Rodney for his mother, and Rodney had thrown that note out of the van while it was in line to leave the school.)] ***
>
> [THE STATE]: *** While this was going on, while his note was outside, was Rodney pleading to get his note?
>
> [LINDLEY:] He was--I wouldn't say plead-ing. I would say more like ordering, order-ing myself or the driver to get his note, and, yes, he would use some off-colored lan-guage in order to try to pursue that.
>
> [THE STATE:] Did he attempt to go get

- 3 -

the note?

[LINDLEY:] Yes, he did.  At one point he tried to climb over the seat ***.  When that didn't work, at some point he even laid down in the seat and kicked the ceiling ***.

[THE STATE:] Subsequently[,] did he, after the incident with the note, state that he was going to hit you?

[LINDLEY:] Yes, he had told me he was going to hit me.  He told me he was going to bite me.  He told me that he hated me.  ***

[THE STATE:] Okay, and what did he subsequently do after he made those threats?

[LINDLEY:] I mean he did hit me, yes. He hit me on [a] countless number of occasions in the arm.  I mean, once we got him in his seat belt and got him to latch his seat belt, I held the seat belt because, first of all, we couldn't move [the van] unless we had our seat belt on, and the driver clearly told him *** to put his seat belt on, which he didn't want to do.  But once he got the seat belt on, I held my hand over the seat belt. That's when I received quite a few *** blows to my upper and lower arm.

[THE STATE:] Okay, and soon thereaf-

- 4 -

ter[,] did you pick up the other children?

[LINDLEY:] Yeah, we did.

[THE STATE:] And what happened after the other children were picked up as far as Rodney's behavior?

[LINDLEY:] It continued. It continued to disintegrate further from there. ***

* * *

*** [A]t one point Rodney *** [got] down on the floorboard, and he was looking for something to hit me with as he indicated ***. *** Rodney managed to find some stuff down on the floor. *** He wiped [crushed crackers] on me. He found a couple of double A batteries and he threw those at me. *** He pulled [an armrest] liner out and threw it at me. ***

[THE STATE:] And when you say that he threw these things at you, did he actually hit you with them?

[LINDLEY:] Yes, he actually hit me with them.

[THE STATE:] So he hit you with the liner and hit you with the batteries?

[LINDLEY:] Yes, and he hit me with his shoe, and he also wiped his sock on my face after he pulled his sock off.

[THE STATE:] And I'll give you a quote from the police report. You can tell me if this is accurate. After he took the sock and rubbed it in your face, did he state to you, 'Give me my fucking shoe back[,] you bastard. I don't give a damn what you said.'?

[LINDLEY:] Yes.

* * *

[THE STATE:] And am I correct, he had struck you with one shoe[,] and you took it away, and did he subsequently take his other shoe and strike you?

[LINDLEY:] We're moving down the road. We're still in Bloomington, *** and he takes his shoe and his sock off, hits me with it, then throws it up to the front of the van between the two students so that I couldn't get his shoe. So, yes.

* * *

[THE STATE:] [Y]ou said this conduct continued all the way back to Mount Pulaski. Is that correct?

[LINDLEY:] That's correct.

[THE STATE:] And did Rodney at some point strike you in the face?

[LINDLEY:] Yes, he did.

- 6 -

[THE STATE:] Okay, and when did that occur?

[LINDLEY:] You know, that occurred *** around Heyworth or *** Atlanta ***.  If I would be *** looking straight forward in front of me he would hit me in the face.  *** [T]he hits became worse when we were in Lincoln.  I mean, subsequently worse.  I mean where they were direct punches to my face. At that point, when we were in Lincoln ***.

* * *

[THE STATE:] I just want to clarify, *** when you were in Lincoln, that's when he punched you in the face and he asked you if you liked that, or if that hurt, or something to that effect?

[LINDLEY:] Yes ***.

Rodney and his mother, Debra S., testified in Rodney's defense.  Rodney's testimony in large part corroborated Lindley's account of the incident in the van.  Debra testified that she (1) did not know exactly what happened in the van and (2) had been unsuccessful in her attempts to discipline Rodney.

C. The Trial Court's Findings and Rodney's Sentence

Immediately following Rodney's trial, the trial court (1) found him guilty of both counts of aggravated battery and (2) adjudicated him a delinquent minor.  Following a January 2009

sentencing hearing, the court placed Rodney in the custody of DCFS and sentenced him to probation "until [he] attains 21 years of age."

This appeal followed.

## II. ANALYSIS

Rodney argues that (1) he was denied his right to counsel because his court-appointed lawyer acted as both his trial attorney and guardian ad litem; (2) this court should order the trial court to amend its order of adjudication to reflect one count of aggravated battery pursuant to the one-act, one-crime rule; and (3) his sentence is (a) void and (b) excessive. We address Rodney's contentions in turn.

## A. Rodney's Claim That He Was Denied His Right to Counsel

Rodney first contends that he was denied his right to counsel because his court-appointed lawyer acted as both his trial attorney and guardian ad litem. Specifically, Rodney asserts that (1) the due-process clauses of the Illinois and United States Constitutions and (2) the Juvenile Court Act require that the trial court appoint an attorney to defend juveniles and a separate individual to act as guardian ad litem. Rodney posits, citing several secondary sources, that such dual representation amounts to a per se conflict and, under the facts of this case, an actual conflict. We disagree.

### 1. Section 1-5(1) of the Juvenile Court Act

Section 1-5(1) of the Juvenile Court Act provides, in pertinent part, as follows:

"[T]he minor who is the subject of the proceeding and his parents *** have the right to be present, to be heard, to present evidence material to the proceedings, to cross-examine witnesses, to examine pertinent court files and records and also, although proceedings under this Act are not intended to be adversary in character, the right to be represented by counsel. *** Counsel appointed for the minor *** shall appear at all stages of the trial court proceeding ***. ***

No hearing on any petition *** filed under this Act may be commenced unless the minor who is the subject of the proceeding is represented by counsel. Notwithstanding the preceding sentence, if a guardian ad litem has been appointed for the minor under [s]ection 2-17 of this Act [(705 ILCS 405/2-17 (West 2008))] and the guardian ad litem is a licensed attorney at law of this State, *** the court may not require the appointment of counsel to represent the minor <u>unless</u> the court finds that the minor's interests are in conflict with what the guardian ad litem determines to be in the best interest of the minor." (Emphasis added.) 705 ILCS 405/1-

5(1) (West 2008).

## 2. Counsel's Obligations in Juvenile Proceedings

Proceedings under the Juvenile Court Act are not adversarial in the traditional sense. In re B.K., 358 Ill. App. 3d 1166, 1171, 833 N.E.2d 945, 950 (2005). "Unlike a purely adversarial proceeding, a juvenile case requires the juvenile's welfare and best interests to be considered." B.K., 358 Ill. App. 3d at 1171, 833 N.E.2d at 950. In In re Beasley, 66 Ill. 2d 385, 389, 362 N.E.2d 1024, 1026 (1977), the supreme court described proceedings under the Juvenile Court Act as follows:

> "Although such a proceeding retains certain adversary characteristics, it is not in the usual sense an adversary proceeding, but it is one to be administered in a spirit of humane concern for and to promote the welfare of the minor as well as to serve the best interests of the community."

Put another way, a delinquency proceeding under the Juvenile Court Act is not a traditional criminal prosecution. A lawyer's responsibility in a juvenile case is unique because counsel has to protect the juvenile's best interests even if those interests do not correspond with the juvenile's wishes. As this court has previously stated, "[t]he roles of a guardian ad litem and minor's counsel are not inherently in conflict" because "[b]oth have 'essentially the same obligations to the minor and to society.'" In re J.D., 351 Ill. App. 3d 917, 920, 815 N.E.2d 13,

- 10 -

15 (2004), quoting <u>In re R.D.</u>, 148 Ill. App. 3d 381, 387, 499 N.E.2d 478, 482 (1986) (also noting that no conflict exists because the guardian <u>ad</u> <u>litem</u>, like defense counsel, has a duty of loyalty to the minor, not the State).

We acknowledge the various out-of-state cases and articles cited in Rodney's brief that challenge the dual role of counsel and guardian <u>ad</u> <u>litem</u> as a conflict. However, we are unpersuaded by them. Considering the matter further, we adhere to the wisdom shown by the cases that we have cited, which we conclude suggest a commonsense approach to protecting juveniles in delinquency proceedings. Accordingly, we adhere to our previously expressed view that the appointment of a lawyer to act as both a juvenile's trial attorney and guardian <u>ad</u> <u>litem</u> does not create a <u>per</u> <u>se</u> conflict of interest.

### 3. <u>The</u> <u>Juvenile</u> <u>Proceedings</u> <u>in</u> <u>This</u> <u>Case</u>

Having concluded that the appointment of a lawyer to act as both a juvenile's trial attorney and guardian <u>ad</u> <u>litem</u> does not create a <u>per</u> <u>se</u> conflict of interest, we now turn to whether Rodney's attorney had an actual conflict in this case.

In support of Rodney's contention that his trial counsel had a conflict, Rodney notes that his counsel elicited testimony that had the effect of bolstering the State's case. Specifically, Rodney's brief to this court states as follows:

> "The State's case against Rodney was not
>
> strong. Although there were several wit-
>
> nesses to Rodney's alleged altercation with

- 11 -

*** Lindley, including the driver of the van *** , the State presented only Lindley's testimony that Rodney had hit him while the van passed through Logan County. *** Rather than exploiting the weakness of the State's case, however, counsel simply elicited testimony which bolstered the State's case against his client.  During his 'cross[-]examination' of Lindley, counsel elicited testimony that Lindley had not hurt Rodney so as to provoke the boy's outburst--something which the State had failed to do in its own examination of the witness. *** Counsel's case-in-chief was limited to eliciting testimony from Rodney which confirmed Lindley's version of events and presenting evidence that Rodney had lost privileges at home as a result of the incident.  In light of counsel's actions, it[']s not surprising that the trial court found the evidence against Rodney 'overwhelming.'"

The record shows that Rodney's attorney asked Lindley the following questions on cross-examination:

"Q.  [W]ith respect to the first contact that you made with [Rodney], *** that would be considered a form of disciplinary action or restraint?

- 12 -

A. The only thing I ever did was hold his seat belt. That was it.

Q. Okay, there was never any physical contact you made against him in any fashion?

A. No.

Q. And when you held his seat belt, were you holding it in a way that put any pressure on [Rodney]?

A. No.

Q. Was there any part of the seat belt that in some way could have been injuring this minor?

A. No.

Q. When you had your hands on this belt, what part of the belt did you have your hands on?

A. The actual buckle.

Q. And as part of that process[,] were you putting any weight on the belt?

A. No. I was *** too far away to actually do that. Besides, I didn't want to be any closer than I had to be because if I'd been any closer, you know, that would have been too close a contact for the amount of hits and stuff that I received.

Q. All right--

- 13 -

A.  I left space between he [sic] and I [sic], and I honestly put my hand out over to the seat belt.

Q.  Okay.  Were there periods of time that would pass where nothing was happening other than the fact that you were holding onto the seat belt?

A.  Yeah.

Q.  And when things would re-initiate, is there anything specific that happened, or tell me--

A.  It was still bothering him that I had my hand on his seat belt, but I couldn't take my hand off the seat belt because my concern was that he would be out of the seat belt, and basically the only part of the seat belt that was even on him was the lap part. He refused to have the across-the-chest part, and--

Q.  So that wasn't on his body at all?

A.  No.  ***

Q.  Where was it that the cheese crackers were smeared on your face?

A.  That was back at the school.

Q.  So at that point the bus was not moving?

A.   I should say, the second school ***.
No, the bus was not moving.  At that time, we
were trying to *** talk him into getting back
into his seat belt.

Q.   So he was free.  He had free mobil-
ity at that point?

A.   He had free mobility, but he was
throwing a tantrum ***.  He was looking for
*** something *** and that's when he found
the cheese crackers.

Q.   So how ultimately[,] did he end up
back in the seat belt?

A.   *** He finally went back to his
seat.  He put his seat belt on, and instantly
took it back off.  That's when I came to the
conclusion that the only way to keep the seat
belt on was to keep it closed."

These questions did not create a conflict.  To the
contrary, these questions were asked to challenge Lindley's
version of events, as well as the accuracy of his recollection.
That Lindley's answers may have reinforced his direct testimony
does not somehow create a scenario in which Rodney's counsel was
acting as an arm of the prosecution.

There is a reason no ineffective-assistance arguments
have been made here; no question exists that Rodney committed
these acts.  When, as here, "counsel ha[s] few favorable facts at

his disposal, and many unfavorable ones with which to contend" (People v. Burnett, No. 107807, slip op. at 8 (March 18, 2010), __ Ill. 2d __, ___, __ N.E.2d __, ___), his duty to his client and the court is to do the best that he can under the circumstances.

We acknowledge that a conflict in a juvenile proceeding can be significant enough to require dual representation, but that is clearly not the situation before us. Instead, Rodney's counsel's representation was carefully crafted to (1) protect Rodney's interests and (2) assist the court in arriving at an outcome that would be in Rodney's best interests. We conclude that under these circumstances, it was both "financially and functionally prudent to appoint a single attorney to perform both roles." B.K., 358 Ill. App. 3d at 1174, 833 N.E.2d at 952.

### B. Rodney's Claim That His Adjudication Violates the One-Act, One-Crime Rule

Rodney next contends that his adjudication violates the one-act, one-crime rule. Specifically, Rodney asserts that this court should instruct the trial court to amend its order of adjudication to reflect one count of aggravated battery to comply with the one-act, one-crime rule because the State failed to differentiate between each individual strike or blow in the charging instrument. The State responds that although it did not differentiate between each individual strike or blow, the State treated Rodney's conduct as multiple acts. In support of its position, the State points out that it (1) charged Rodney with multiple counts of aggravated battery and (2) presented evidence

to support multiple convictions at trial.  For the reasons that follow, we agree with Rodney.

### 1. Forfeiture and the Plain-Error Rule

Initially, we note that Rodney has forfeited review of his one-act, one-crime contention because, as he acknowledges in his brief, he failed to raise this issue at the trial court level.  See People v. Reed, 177 Ill. 2d 389, 394, 686 N.E.2d 584, 586 (1997) (sentencing issues must be raised in the trial court to preserve those issues for appellate review).  Nonetheless, Rodney posits that plain-error review is warranted because violations of the one-act, one-crime rule substantially affect fundamental fairness, particularly in juvenile proceedings.  The State counters that because no violation of the one-act, one-crime rule occurred in this case--that is, no error occurred--the plain-error doctrine does not apply.  Because (1) for the reasons that we explain below, error occurred in this case, and (2) "it is well established that a one-act, one-crime violation affects the integrity of the judicial process" (In re Samantha V., 234 Ill. 2d 359, 378, 917 N.E.2d 487, 499 (2009)), we agree with Rodney.

### 2. The One-Act, One-Crime Rule

In People v. King, 66 Ill. 2d 551, 363 N.E.2d 838 (1977), the supreme court penned its seminal decision involving what is often referred to as the one-act, one-crime rule.  In King, the supreme court explained that a defendant may not be convicted of more than one offense as a result of the same

physical act.  <u>King</u>, 66 Ill. 2d at 566, 363 N.E.2d at 844.  More than two decades later in <u>People v. Crespo</u>, 203 Ill. 2d 335, 788 N.E.2d 1117 (2001), the supreme court noted that, for purposes of defining the "act" referred to in <u>King</u>, its precedent demonstrated that separate blows, although closely related, could be separate acts sufficient to support multiple convictions. <u>Crespo</u>, 203 Ill. 2d at 341-42, 788 N.E.2d at 1121, citing <u>People v. Dixon</u>, 91 Ill. 2d 346, 438 N.E.2d 180 (1982).  However, to sustain multiple convictions for closely related separate blows, the supreme court noted that the State had to apportion those separate blows at the trial level.  <u>Crespo</u>, 203 Ill. 2d at 345, 788 N.E.2d at 1123 (holding that in such cases "the indictment must indicate that the State intended to treat the conduct of defendant as multiple acts in order for multiple convictions to be sustained").

One-act, one-crime analysis involves the following two steps: (1) the reviewing court must determine whether the defendant's conduct consisted of one physical act or separate physical acts and, if the court concludes that the conduct consisted of separate acts, (2) the court must determine whether any of those offenses are lesser-included offenses.  <u>People v. Harvey</u>, 211 Ill. 2d 368, 389, 813 N.E.2d 181, 194-95 (2004).  An "act" is "any overt or outward manifestation which will support a different offense."  <u>King</u>, 66 Ill. 2d at 566, 363 N.E.2d at 844-45.  As previously stated, separate blows, although closely related, may constitute separate acts sufficient to support multiple convic-

tions.  <u>Crespo</u>, 203 Ill. 2d at 342, 788 N.E.2d at 1121.  However, a defendant may be prejudiced when the State treats closely related acts as one but changes its course on appeal to assert separate acts to support separate convictions.  See <u>Crespo</u>, 203 Ill. 2d at 342-43, 788 N.E.2d at 1121-22.  To sustain multiple convictions for closely related separate blows, the State must provide the defendant notice of its intent to treat each blow as a separate act by apportioning those separate blows at the trial level.  See <u>Crespo</u>, 203 Ill. 2d at 344-45, 788 N.E.2d at 1122-23. If the court determines that the State pursued the charges against the defendant as a single physical act, then multiple convictions are improper and the reviewing court need not proceed to the lesser-included step of the one-act, one-crime analysis. <u>People v. Rodriguez</u>, 169 Ill. 2d 183, 186, 661 N.E.2d 305, 306-07 (1996).

Accordingly, we must first determine whether the State alleged that Rodney's conduct consisted of separate acts or a single physical act.  As this determination is one of law, we review it <u>de</u> <u>novo</u>.  <u>Samantha V.</u>, 234 Ill. 2d at 369, 917 N.E.2d at 494.

### 3. <u>The</u> <u>Supreme</u> <u>Court's</u> <u>Decision</u> <u>in</u> <u>Samantha V.</u>

In <u>Samantha V.</u>, 234 Ill. 2d at 376-77, 917 N.E.2d at 498, the State filed an amended petition for adjudication of wardship against Samantha, alleging that she committed two counts of aggravated battery.  The first count alleged as follows:

"'On or about June 10, 2005, *** [respondent]

committed the offense of AGGRAVATED BATTERY,'
when she 'knowingly caused great bodily harm
to [the victim], in that the above named
minor struck [the victim] about her head
multiple times, causing a laceration which
required stitches.'" Samantha V., 234 Ill.
2d at 377, 917 N.E.2d at 498.

Similarly, count II alleged as follows:

"'[O]n or about June 10, 2005, *** [respon-
dent] committed the offense of AGGRAVATED
BATTERY, *** while [the victim] was on the
street or sidewalk of *** a public way,' when
she 'knowingly caused bodily harm to [the
victim] in that the above named minor struck
[the victim] about the face and/or body mul-
tiple times causing lacerations to her face
and/or body.'" Samantha V., 234 Ill. 2d at
377, 917 N.E.2d at 498.

Samantha argued that her multiple convictions for aggravated battery violated the one-act, one-crime rule. Samantha V., 234 Ill. 2d at 375-76, 917 N.E.2d at 498. Specifically, Samantha asserted that the finding of guilt entered against her for aggravated battery predicated upon great bodily harm (count I) was based on the same physical act as her conviction for aggravated battery on a public way (count II). Samantha V., 234 Ill. 2d at 375-76, 917 N.E.2d at 498. The State responded that

Samantha was charged with and found guilty of those counts based on separate physical acts that resulted in distinct physical injuries. Samantha V., 234 Ill. 2d at 376, 917 N.E.2d at 498.

Citing its decision in Crespo, the supreme court concluded that the counts alleged against Samantha were based on the same conduct but predicated upon different theories of criminal culpability. Samantha V., 234 Ill. 2d at 377, 917 N.E.2d at 498-99. The supreme court added that "the State *** did not differentiate between strikes or blows to the victim when drafting the charging instrument." Samantha V., 234 Ill. 2d at 377, 917 N.E.2d at 498. Instead, the court noted, "the State drafted the adjudication petition to include two counts charging [Samantha] with the same conduct under two different theories." Samantha V., 234 Ill. 2d at 377, 917 N.E.2d at 498-99.

### 4. The State's Petition in This Case

In this case, the State filed the petition for adjudication of wardship against Rodney, alleging that he committed two counts of aggravated battery against Lindley. The first count alleged as follows:

> "[O]n or about September 3, 2008[,] in Logan
> and McLean Counties *** [Rodney] committed
> the offense of AGGRAVATED BATTERY, [when he]
> knowingly made physical contact of an insult-
> ing or provoking nature with *** Lindley, in
> that [Rodney] rubbed cheese on *** Lindley's
> shirt, threw batteries at Lindley, rubbed a

sock in Lindley's face, threw a shoe at

Lindley, and repeatedly punched *** Lindley

in the face with his fists."

Count II alleged as follows:

"[O]n or about September 3, 2008[,] in Logan

and McLean Counties *** [Rodney] committed

the offense of AGGRAVATED BATTERY, [when he]

knowingly made physical contact of an insult-

ing or provoking nature with *** Lindley, in

that [Rodney] rubbed cheese on *** Lindley's

shirt, threw batteries at Lindley, rubbed a

sock in Lindley's face, threw a shoe at

Lindley, and repeatedly punched *** Lindley

in the face with his fists."

Thus, the State alleged that Rodney committed two counts of

aggravated battery based on a closely related series of acts

occurring on the same day.  Compare People v. Bishop, 218 Ill. 2d

232, 843 N.E.2d 365 (2006) (series of acts were not closely

related where the State charged the defendant with eight counts

of sexual assault that occurred between 1998 and 2000).  As

previously stated, a series of closely related acts may be

considered a single act for purposes of the one-act, one-crime

rule when the State charges the acts as a single course of

conduct.  See Samantha V., 234 Ill. 2d at 376-77, 917 N.E.2d at

498-99.

Here, as in Samantha V., the State did not differenti-

- 22 -

ate between the blows Rodney inflicted on Lindley when it drafted the charging instrument. Instead, the delinquency petition included two counts charging Rodney with the same conduct under two different theories of criminal culpability. That is, the State's petition alleged that Rodney committed aggravated battery and used the exact same language to describe the acts as a single series of events in both counts. The only difference in the two counts was the language the State used to elevate each battery to aggravated status--namely, the fact that (1) the battery took place on public property (720 ILCS 5/12-4(b)(8) (West 2008)) in count I and (2) Lindley was an employee of a local school district (720 ILCS 5/12-4(b)(18) (West 2008)) in count II. The State charged Rodney under multiple counts for the exact same conduct--described as a series of acts in its petition--based on two different theories of criminal culpability.

Because we have determined that the State did not pursue the charges against Rodney as individual acts, we need not proceed to the second step in the one-act, one-crime analysis. Rodriguez, 169 Ill. 2d at 186, 661 N.E.2d at 306-07. Accordingly, we conclude that Rodney's multiple convictions for aggravated battery violated the one-act, one-crime rule.

Although we conclude that Rodney's multiple convictions for aggravated battery violated the one-act, one-crime rule, we note, as the supreme court did in Samantha V. and in Crespo before it, that each blow to Lindley could have supported a separate finding of guilt for aggravated battery. Samantha V.,

- 23 -

234 Ill. 2d at 378, 917 N.E.2d at 499; Crespo, 203 Ill. 2d at 345, 788 N.E.2d at 1123. However, multiple convictions may only be sustained "if the charging document reflects the State's intent to apportion the accused's conduct and prosecute the accused for multiple crimes." Samantha V., 234 Ill. 2d at 378, 917 N.E.2d at 499. As drafted, the State's petition alleges that Rodney committed aggravated battery based on a series of acts that took place in Logan and McLean counties. Had the State alleged, for example, that Rodney committed aggravated battery in one county or the other in each count, or in both counties but based on separate blows, Rodney's conviction on multiple counts could withstand one-act, one-crime scrutiny. See People v. Olivieri, 334 Ill. App. 3d 311, 778 N.E.2d 714 (2002) (holding that the State's information clearly charged the defendant with three separate sexual assaults); see also Bishop, 218 Ill. 2d at 247, 843 N.E.2d at 374 (holding that no one-act, one-crime issue existed where the multicount indictment alleged, in part, alter- native theories, and, in part, that certain crimes were greater- and lesser-included offenses).

In summary, we agree that under the one-act, one-crime rule, one of the trial court's delinquency findings entered against Rodney should be vacated. See Samantha V., 234 Ill. 2d at 379-80, 917 N.E.2d at 500. When, as in this case, the punish- ments are identical and the more serious offense cannot be determined on appeal, the best course of action is to remand the cause to the trial court for that determination. See Samantha

V., 234 Ill. 2d at 379-80, 917 N.E.2d at 500, citing People v. Artis, 232 Ill. 2d 156, 170, 902 N.E.2d 677, 686 (2009). Therefore, we direct the court to correct its "Adjudication Order," which indicates that Rodney has been found delinquent of "[two] counts of [a]ggravated [b]attery" once it determines whether count I or count II is the more serious offense.

C. Rodney's Claim That His Sentence Is Void and Excessive

Rodney next contends that his sentence is void and excessive. Rodney asserts that his sentence is void because, under the Juvenile Court Act, the term of probation available to the trial court was limited to five years, given that the aggravated battery upon which Rodney's adjudication was based did not constitute a forcible felony. Alternatively, Rodney posits that "the imposition of a nearly [11]-year term of probation constituted an abuse of discretion." We agree with Rodney that his sentence is void.

### 1. The Standard of Review

Because Rodney's initial challenge to his sentence requires this court to construe the language of the Juvenile Court Act, our review is de novo. In re Z.L., 379 Ill. App. 3d 353, 376-77, 883 N.E.2d 658, 677 (2008).

### 2. Probation Under the Juvenile Court Act

Once a trial court adjudicates a juvenile delinquent, it may sentence the juvenile to the following period of probation under section 5-715(1) of the Juvenile Court Act:

"The period of probation *** shall not

exceed 5 years or until the minor has achieved the age of 21 years, whichever is less, except as provided in this [s]ection for a minor who is found to be guilty for an offense which is *** a forcible felony. The juvenile court may terminate probation *** and discharge the minor at any time if warranted by the conduct of the minor and the ends of justice; provided, however, that the period of probation for a minor who is found to be guilty for an offense which is *** a forcible felony shall be at least 5 years." 705 ILCS 405/5-715(1) (West 2008).

3. The Legislature's Definition of a Forcible Felony

The legislature has defined "forcible felony" as follows:

"'Forcible felony' means treason, first degree murder, second degree murder, predatory criminal sexual assault of a child, aggravated criminal sexual assault, criminal sexual assault, robbery, burglary, residential burglary, aggravated arson, arson, aggravated kidnaping, kidnaping, aggravated battery resulting in great bodily harm or permanent disability or disfigurement and any other felony which involves the use or threat

of physical force or violence against any individual."  720 ILCS 5/2-8 (West 2008).

### 4. Rodney's Contention That the Aggravated Battery Upon Which His Adjudication Was Based Did Not Constitute a Forcible Felony

Rodney contends that his sentence is void because, under the Juvenile Court Act, the term of probation available to the trial court was limited to five years, given that the aggravated battery upon which Rodney's adjudication was based did not constitute a forcible felony.  Specifically, Rodney asserts that the language defining a forcible felony as an "aggravated battery resulting in great bodily harm or permanent disability or disfigurement" is limiting language.  The State responds that Rodney's sentence is not void because the plain language of the definition includes "any other felony which involves the use or threat of physical force or violence against an individual," which includes aggravated battery.  We agree with Rodney.

When interpreting a statute, the reviewing courts must ascertain and give effect to the legislature's intent.  People v. Jones, 214 Ill. 2d 187, 193, 824 N.E.2d 239, 242 (2005).  The legislature's intent is best ascertained by examining the language of the statute itself.  People v. Belk, 203 Ill. 2d 187, 192, 784 N.E.2d 825, 827 (2003).  Reviewing courts must construe the language of a penal statute in favor of the accused.  In re Jaime P., 223 Ill. 2d 526, 539, 861 N.E.2d 958, 966 (2006).  "In interpreting a statute, a court should 'consider, in addition to the statutory language, the reason for the law, the problems to

- 27 -

be remedied, and the objects and purposes sought.'"  People v. Schmidt, 392 Ill. App. 3d 689, 695, 924 N.E.2d 998, 1005 (2009), quoting People v. Donoho, 204 Ill. 2d 159, 171-72, 788 N.E.2d 707, 715 (2003).

Recently faced with this issue--namely, whether the legislature intended to exclude aggravated batteries that did not result in "great bodily harm or permanent disability or disfigurement"--the First District Appellate Court held as follows:

> "[B]y using the word 'other' [in section
> 2-8 (720 ILCS 5/2-8 (West 2008))] after list-
> ing 14 specific felonies, the legislature
> clearly intended the residual category to
> refer to felonies not previously specified.
> Where the statute specifically enumerated
> aggravated battery resulting in great bodily
> harm or permanent disability or disfigure-
> ment, 'other felony' must refer to felonies
> other than aggravated battery." Schmidt, 392
> Ill. App. 3d at 695, 924 N.E.2d at 1006.

We adopt the First District's analysis in Schmidt and find support for our conclusion, as did that court, in the 1990 amendment to the forcible-felony statute.  Before the 1990 amendment, the definition of a forcible felony included all aggravated batteries.  In 1990, the legislature added the phrase "resulting in great bodily harm or permanent disability or

disfigurement." See Schmidt, 392 Ill. App. 3d at 696, 924 N.E.2d at 1006 (noting that the legislature added that phrase via Public Act 86-291 (Pub. Act 86-291, §1, eff. January 1, 1990 (1989 Ill. Laws 2183, 2183)) to limit the number and types of aggravated batteries that would qualify as forcible felonies). We agree with the First District that "the legislature expressed its intent to limit the number and types of aggravated batteries that would qualify as forcible felonies" (Schmidt, 392 Ill. App. 3d at 696, 924 N.E.2d at 1006) when it enacted the 1990 amendment.

Accordingly, while we acknowledge the split in the appellate court on this issue (see, for example, In re Angelique E., 389 Ill. App. 3d 430, 433, 907 N.E.2d 59, 62-63 (2009) (Second District, holding that the forcible-felony statute includes only aggravated batteries that result in great bodily harm, permanent disability, or disfigurement); compare People v. Jones, 226 Ill. App. 3d 1054, 1056, 590 N.E.2d 101, 103 (1992) (Third District, holding that the legislature intended to include any aggravated battery in the definition of "forcible felony," despite acknowledging that its conclusion in that regard was not free from doubt)), we conclude that the legislature intended the residual category of section 2-8 (720 ILCS 5/2-8 (West 2008)) to refer to felonies not previously specified in the preceding list of felonies contained within that section. Therefore, we (1) vacate the trial court's sentence of 11 years of probation because that sentence exceeded the court's authority and is therefore void and (2) remand for a new sentencing hearing with

directions that the trial court sentence Rodney within the 5-year window for probation provided by section 5-715 of the Juvenile Court Act.

Because we have vacated Rodney's sentence as void, we need not address his alternative argument that his sentence was excessive. However, we note that as part of his excessive-sentence argument, Rodney claims that the trial court failed to properly admonish him pursuant to Supreme Court Rule 605(a) (210 Ill. 2d R. 605(a)). Although we do not address Rodney's claim directly, we remind the trial court that Rule 605(a) requires a court to admonish a delinquent directly with respect to each of his rights under Rule 605(a), even when, as in this case, the delinquent's counsel concedes that he has been properly admonished. Such concessions should not be sought and, when offered, should be disregarded.

### III. CONCLUSION

For the reasons stated, we affirm the judgment of the trial court in part, vacate in part, and remand with directions to (1) vacate one finding of delinquency and (2) resentence Rodney in conformity with this opinion.

Affirmed in part and vacated in part; cause remanded with directions.

TURNER and POPE, JJ., concur.