NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 231090-U

NO. 4-23-1090

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
December 16, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Peoria County |
| DAVID DILLARD, | ) | No. 21CF140 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | John P. Vespa, |
| | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Justices Lannerd and Vancil concurred in the judgment.

**ORDER**

¶ 1     *Held*:  The appellate court affirmed in part and vacated in part, holding (1) the statute
               prohibiting possession of a weapon by a felon is not facially unconstitutional
               under the second amendment to the United States Constitution and (2) defendant's
               conviction of aggravated discharge of a firearm must be vacated under the one-
               act, one-crime rule.

¶ 2     Following a jury trial, defendant, David Dillard, was found guilty of aggravated

battery (720 ILCS 5/12-3.05(e)(1) (West 2020)), aggravated discharge of a firearm (720 ILCS

5/24-1.2(a)(2) (West 2020)), and unlawful possession of a weapon by a felon (720 ILCS

5/24-1.1(a) (West 2020)). The trial court sentenced him to concurrent prison terms of 30 years,

15 years, and 14 years, respectively. On appeal, defendant contends (1) his conviction of

unlawful possession of a weapon by a felon must be vacated because the statute defining the

offense is facially unconstitutional under the second amendment to the United States

Constitution (U.S. Const., amend. II) and (2) his conviction of aggravated discharge of a firearm

must be vacated under the one-act, one-crime rule. We vacate defendant's aggravated discharge of a firearm conviction, but otherwise affirm the trial court's judgment.

¶ 3                                                   I. BACKGROUND

¶ 4            In March 2021, defendant was charged by indictment with aggravated battery (720 ILCS 5/12-3.05(e)(1) (West 2020)), aggravated discharge of a firearm (720 ILCS 5/24-1.2(a)(2) (West 2020)), and unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2020)). The State generally alleged defendant committed the offenses by knowingly discharging a handgun at a motor vehicle occupied by Anthony Thomas.

¶ 5            At defendant's jury trial, Anthony Thomas testified he and a friend drove to a liquor store on the evening of March 7, 2021. After going into the store, Thomas returned to his car and called a couple of his family members. Thomas was waiting in his car for a family member to meet him at the store when he "look[ed] up and I [saw] somebody walk in the store with like a gun hanging off their hip." A few minutes later, Thomas heard gunshots and lost his vision. Although he was paying attention, Thomas did not see the person with the gun or anyone else come out of the liquor store. Thomas testified he was blind as a result of this incident.

¶ 6            Peoria County Sheriff's Deputy Benjamin Davison testified that when he arrived at the liquor store, he observed a man on the ground in the parking lot with a sweatshirt over his head. The man stated he had been shot and thought he was going to die. After emergency responders arrived, the sweatshirt was removed from the man's face, and Davison observed a gunshot wound to one of his eyes. Davison searched the area and found a vehicle believed to be connected to the suspect. The vehicle was located less than one block away from the liquor store.

¶ 7            Peoria County Sheriff's Deputy Timothy Gilmore testified he responded to the shooting at the liquor store. When he arrived, he went inside the store to view surveillance video

footage. In the video footage of the shooting, Gilmore observed a tall, thin black man wearing sandals, jeans with "novelty holes in them[ and] a black stripe down the side," a black sweatshirt, and a "Covid mask" with "flames on it like a smile." The video footage showed the man pull out a handgun and fire into the vehicle four times before the handgun appeared to jam and the man ran away. After he watched the video of the shooting, Gilmore rewound the footage to when Thomas arrived at the store. Gilmore observed a thin black man enter the liquor store wearing the exact same jeans and mask as the shooter, but the man was also wearing a "puffy blue coat" and bright-colored shoes. The man was only inside the store for "a minute" and then walked back out and looked at Thomas's vehicle.

¶ 8 Gilmore testified he had been conducting his investigation at the liquor store for approximately 30 minutes when he observed a man matching the description of the shooter "just in the street over on the corner *** kind of watching us do what we're doing." Gilmore and two other deputies approached and arrested the man, who was later identified as defendant. Gilmore testified he found a "Covid mask" in defendant's pocket matching the one the shooter was wearing in the video footage.

¶ 9 Lieutenant Benjamin Johnston with the Peoria County Sheriff's Office testified defendant had a phone in his hand when he was arrested. In searching the phone, Johnston found a text message sent shortly after the time of the shooting, which stated, "Just wowop a mf." Johnston testified the message was slang for shooting a person.

¶ 10 Police officers obtained a warrant to search the car found near the liquor store. Inside the car, officers found a wallet containing defendant's Social Security card and debit card. Officers also recovered a black sweatshirt similar to the one worn by the shooter in the surveillance video footage. Forensic testing of the sweatshirt revealed trace evidence of gunshot

residue.

¶ 11　　　　Based on the evidence, the jury found defendant guilty of all three counts. The trial court sentenced him to concurrent prison terms of 30 years for aggravated battery, 15 years for aggravated discharge of a firearm, and 14 years for unlawful possession of a weapon by a felon.

¶ 12　　　　This appeal followed.

¶ 13　　　　　　　　　　　　II. ANALYSIS

¶ 14　　　　Defendant raises two issues on appeal. First, he argues his conviction of unlawful possession of a weapon by a felon must be vacated because the statute defining the offense is facially unconstitutional under the second amendment to the United States Constitution (U.S. Const., amend. II). Second, defendant contends his conviction of aggravated discharge of a firearm must be vacated under the one-act, one-crime rule. We address defendant's contentions in turn.

¶ 15　　　　　　　　　　　A. Second Amendment

¶ 16　　　　Defendant argues the unlawful possession of a weapon by a felon statute is facially unconstitutional under the United States Supreme Court's decision in *New York Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022). Despite his prior felony conviction, defendant contends he is still included within the second amendment's reference to "the people" (U.S. Const., amend. II), and the State cannot point to any historical tradition justifying the Illinois statute's permanent ban on felons possessing firearms. Accordingly, defendant maintains the statute is facially unconstitutional under the analytical framework set forth in *Bruen*.

¶ 17　　　　The State responds the Illinois statute is consistent with this nation's long-standing prohibition on the possession of firearms by felons. The State notes this court has

- 4 -

previously rejected the arguments raised by defendant and contends there is no reason to depart from those prior decisions.

¶ 18 Statutes are presumed constitutional, and the party raising a constitutional challenge has the burden of clearly establishing the statute's invalidity. *People v. Coty*, 2020 IL 123972, ¶ 22, 178 N.E.3d 1071. A party raising a facial challenge must carry a particularly heavy burden because a statute will be found facially unconstitutional only if no set of circumstances exists under which the statute would be valid. *People v. Bochenek*, 2021 IL 125889, ¶ 10, 183 N.E.3d 61. "Courts have a duty to uphold the constitutionality of a statute whenever reasonably possible, resolving any doubts in favor of the statute's validity." *People v. Rizzo*, 2016 IL 118599, ¶ 23, 61 N.E.3d 92. The constitutionality of a statute is a question of law subject to *de novo* review. *Rizzo*, 2016 IL 118599, ¶ 23.

¶ 19 The second amendment to the United States Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const, amend. II. In *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *McDonald v. City of Chicago*, 561 U.S. 742 (2010), the Supreme Court held "the Second and Fourteenth Amendments protect the right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense." *Bruen*, 597 U.S. at 8-9. The Supreme Court subsequently held the protection of the second and fourteenth amendments (U.S. Const., amends. II, XIV) extends to "an individual's right to carry a handgun for self-defense outside the home." *Bruen*, 597 U.S. at 10. In *Bruen*, the Supreme Court set forth the analytical framework for evaluating claims under the second amendment, holding a person's conduct is presumptively protected if it is covered by the plain text of the second amendment and the government must justify any regulation of the conduct by showing the regulation is "consistent with this Nation's

historical tradition of firearm regulation." *Bruen*, 597 U.S. at 17. An individual's conduct falls outside the protection of the second amendment only if the firearm regulation is consistent with this nation's historical tradition. *Bruen*, 597 U.S. at 17.

¶ 20    The regulation at issue in this case is the Illinois statute prohibiting convicted felons from possessing firearms. The statute provides, in pertinent part, as follows:

"It is unlawful for a person to knowingly possess on or about his person or on his land or in his own abode or fixed place of business any weapon prohibited under Section 24-1 of this Act or any firearm or any firearm ammunition if the person has been convicted of a felony under the laws of this State or any other jurisdiction." 720 ILCS 5/24-1.1(a) (West 2020).

¶ 21    As the State observes, this court has previously rejected the claim raised by defendant in this appeal. This court has consistently held a felon's possession of a firearm is not conduct protected under the second amendment. See *People v. Burns*, 2024 IL App (4th) 230428; *People v. Boyce*, 2023 IL App (4th) 221113-U; *People v. Langston*, 2023 IL App (4th) 230162-U. In those cases, this court relied on the reasoning set forth in *People v. Baker*, 2023 IL App (1st) 220328, ¶ 37, 242 N.E.3d 282, as follows:

"The *Bruen* Court could not have been more clear that its newly announced test applied only to laws that attempted to regulate the gun possession of 'law-abiding citizens,' and not felons like defendant. *Bruen*, 597 U.S. at 71 (the holding was limited to laws affecting 'law-abiding citizens'). Just in case a reader missed the first time that the court said it, the court repeated it 18 times. *Bruen*, 597 U.S. 1 *passim* (the six justices in the majority repeated the phrase 'law-abiding' 18 times in their majority opinion and their concurrences). Further, Justice Kavanaugh in

his concurrence quoted an earlier case that stated: ' "[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons ***." ' *Bruen*, 597 U.S. at 81 (Kavanaugh, J., concurring, joined by Roberts, C.J.) (quoting *Heller*, 554 U.S. at 626-27). Justice Kavanaugh's concurrence was joined by Chief Justice Roberts, and they both joined the six-justice majority opinion. Based on the plain, clear, and repeated language of the justices in the majority, defendant is simply outside the box drawn by *Bruen*."

¶ 22    In *Burns*, this court concluded, "The second and fourteenth amendments protect the right of 'law-abiding citizens' to possess handguns" and, as a felon, the defendant did not fall within the category of law-abiding citizens. *Burns*, 2024 IL App (4th) 230428, ¶ 21. Accordingly, this court rejected the defendant's argument that the unlawful possession of a weapon by a felon statute violated the second amendment on its face. *Burns*, 2024 IL App (4th) 230428, ¶ 22.

¶ 23    Defendant, nonetheless, claims the Supreme Court's recent decision in *United States v. Rahimi*, 602 U.S. 680 (2024), alters the analysis. Defendant argues *Rahimi* rejected a "status-based ban" by disagreeing with the government's argument that the defendant could be disarmed simply because he was not "responsible." See *Rahimi*, 602 U.S. at 701-02.

¶ 24    In *Rahimi*, the Supreme Court considered the constitutionality of a federal statute prohibiting an individual subject to a domestic violence restraining order from possessing a firearm if the order also found the individual "represents a credible threat to the physical safety of [an] intimate partner" or a child of the partner or the individual. (Internal quotation marks omitted.) *Rahimi*, 602 U.S. at 685. The Supreme Court held, "An individual found by a court to pose a credible threat to the physical safety of another may be temporarily disarmed consistent

with the Second Amendment." *Rahimi*, 602 U.S. at 702. The Court reasoned, "Since the founding, our Nation's firearm laws have included provisions preventing individuals who threaten physical harm to others from misusing firearms." *Rahimi*, 602 U.S. at 690.

¶ 25    Contrary to defendant's argument, *Rahimi* does not undercut the analysis of our previous decisions finding Illinois's unlawful possession of a weapon by a felon statute constitutional under the second amendment. The Supreme Court's decision in *Rahimi* was based on an application of the analytical framework set forth in *Bruen*. In contrast, in *Burns*, this court held, "The second and fourteenth amendments protect the right of 'law-abiding citizens' to possess handguns," and felons are not within the category of law-abiding citizens. *Burns*, 2024 IL App (4th) 230428, ¶ 21; see *Baker*, 2023 IL App (1st) 220328, ¶ 37 (holding a felon is not a law-abiding citizen and is "simply outside the box drawn by *Bruen*"). Thus, the analytical framework set forth in *Bruen* does not apply to laws restricting the possession of firearms by felons.

¶ 26    Rather than undermining this court's analysis in *Burns* and our other prior decisions, the Supreme Court's decision in *Rahimi* reinforces our analysis. Specifically, in *Rahimi*, the Supreme Court stated it did not "suggest that the Second Amendment prohibits the enactment of laws banning the possession of guns by categories of persons thought by a legislature to present a special danger of misuse." *Rahimi*, 602 U.S. at 698. In the cited portion of *Heller*, the Court made clear "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons." *Heller*, 554 U.S. at 626. In *Rahimi*, the Supreme Court further reasserted prohibitions "on the possession of firearms by 'felons and the mentally ill,' are 'presumptively lawful.' " *Rahimi*, 602 U.S. at 699 (quoting *Heller*, 554 U.S. at 626-27, n.26).

¶ 27　　　　In sum, we continue to adhere to our prior analysis, finding "*Bruen*'s historical-tradition test applies to regulations affecting *law-abiding* citizens' possession of firearms." (Empasis in original.) *Burns*, 2024 IL App (4th) 230428, ¶ 21. The test does not apply here because, as a felon, defendant is not included within the category of law-abiding citizens. See *Burns*, 2024 IL App (4th) 230428, ¶ 21. Even if it did, from *Heller* on, the Supreme Court has made it clear there is substantial evidence of a "historical tradition of firearm regulation" prohibiting felons from possessing firearms. (Internal quotation marks omitted.) *Rahimi*, 602 U.S. at 691. Accordingly, defendant's facial constitutional challenge to the statute fails.

¶ 28　　　　　　　　　　　B. One-Act, One-Crime Rule

¶ 29　　　　Defendant argues this court must vacate his aggravated discharge of a firearm conviction under the one-act, one crime rule because the State failed to apportion the gunshots between the charged offenses in the indictment. Defendant maintains the multiple shots cannot be apportioned to the separate offenses for the first time on appeal.

¶ 30　　　　The State counters defendant's convictions for aggravated battery and aggravated discharge of a firearm were not based on the same physical act. Rather, the evidence at trial showed defendant fired the handgun four times, which may constitute four separate physical acts.

¶ 31　　　　Initially, defendant acknowledges he forfeited this issue by failing to raise it in the trial court. See *People v. Enoch*, 122 Ill. 2d 176, 186, 522 N.E.2d 1124, 1130 (1988) (stating to preserve an issue for review, a party must object at trial and file a written posttrial motion raising the issue). However, defendant contends his claim should be reviewed under the plain error rule because it affects the integrity of the judicial process.

¶ 32　　　　The plain error rule allows appellate review of unpreserved claims when either

- 9 -

"(1) a clear or obvious error occurs and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurs and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565, 870 N.E.2d 403, 410-11 (2007).

It is well-established a one-act, one-crime violation is subject to review under the second prong of the plain error rule because it affects the integrity of the judicial process. *People v. Artis*, 232 Ill. 2d 156, 167-68, 902 N.E.2d 677, 684 (2009). Thus, we must determine whether a violation of the one-act, one-crime rule occurred in this case.

¶ 33 Under the one-act, one-crime rule, a criminal defendant may not be convicted of more than one offense based on the same physical act. *People v. King*, 66 Ill. 2d 551, 556, 363 N.E.2d 838, 844 (1977). In analyzing a claim under the one-act, one-crime rule, a court must determine (1) whether the defendant's conduct consisted of a single physical act or separate acts and (2) if the conduct consisted of separate acts, whether any of the offenses are lesser-included offenses. *People v. Stull*, 2014 IL App (4th) 120704, ¶ 42, 5 N.E.3d 328 (quoting *People v. Rodriguez*, 169 Ill. 2d 183, 186, 661 N.E.2d 305, 306-07 (1996)). We review *de novo* whether a violation of the one-act, one-crime rule occurred. *Stull*, 2014 IL App (4th) 120704, ¶ 43.

¶ 34 In defining what constitutes an "act," the supreme court has held separate blows, although closely related, may be separate physical acts sufficient to support multiple convictions. *In re Rodney S.*, 402 Ill. App. 3d 272, 282, 932 N.E.2d 588, 597 (2010) (citing *People v. Crespo*, 203 Ill. 2d 335, 342, 788 N.E.2d 1117, 1121 (2001)). However, to sustain multiple convictions

for closely related separate acts, the State must apportion the separate acts at the trial level. *Rodney S.*, 402 Ill. App. 3d at 281 (citing *Crespo*, 203 Ill. 2d at 344-45). In such cases, "the indictment must indicate that the State intended to treat the conduct of defendant as multiple acts in order for multiple convictions to be sustained." *Crespo*, 203 Ill. 2d at 345.

¶ 35    In *Crespo*, the supreme court explained a defendant may be prejudiced if the State treats closely related acts as a single act in the trial court but then changes course on appeal and asserts separate acts support multiple convictions. *Rodney S.*, 402 Ill. App. 3d at 282 (citing *Crespo*, 203 Ill. 2d at 342-43). Thus, "[t]o sustain multiple convictions for closely related separate blows, the State must provide the defendant notice of its intent to treat each blow as a separate act by apportioning those separate blows at the trial level." *Rodney S.*, 402 Ill. App. 3d at 282 (citing *Crespo*, 203 Ill. 2d at 344-45). If the State prosecutes the charges as a single physical act, multiple convictions are improper and the reviewing court need not address the lesser-included step of the analysis. *Rodney S.*, 402 Ill. App. 3d at 282 (citing *Rodriguez*, 169 Ill. 2d at 186). Accordingly, we must first determine whether the State alleged defendant's conduct consisted of multiple separate acts or a single physical act. See *Rodney S.*, 402 Ill. App. 3d at 282.

¶ 36    The State argues it apportioned the separate gunshots to the charges in the indictment, but the indictment does not allege or indicate more than one shot was fired. In the aggravated battery charge, the State alleged defendant "in committing a battery, without legal justification did knowingly discharge a handgun in the direction of Anthony Thomas thereby causing an injury to Anthony Thomas by means of the discharging of said firearm." In its aggravated discharge of a firearm count, the State alleged defendant "knowingly discharged a handgun in the direction of a motor vehicle he knew or reasonably should have known was

- 11 -

occupied by a person." Thus, the State alleged a single physical act of knowingly discharging a handgun. The State did not apportion the multiple gunshots between the offenses in the indictment. Instead, the indictment charged defendant with the same conduct or physical act of discharging the handgun under two different theories of criminal liability. See *In re Samantha V.*, 234 Ill. 2d 359, 377, 917 N.E.2d 487, 498-99 (2009) (holding multiple convictions for aggravated battery violated the one-act, one-crime rule where the State failed to differentiate between blows to the victim in the charging instrument, but instead included two counts charging the minor with the same conduct under two different theories of criminal culpability).

¶ 37    In this case, the indictment indicates the State intended to treat defendant's conduct as a single physical act of knowingly discharging a handgun. The indictment does not reflect an intent to apportion the multiple shots between the charges. Additionally, the State does not contend the prosecutor attempted to apportion the multiple shots among the charges during opening or closing argument. The State gave no indication or notice in the trial court of an intent to treat this as more than a single act. See *Crespo*, 203 Ill. 2d at 345 ("[T]he indictment must indicate that the State intended to treat the conduct of defendant as multiple acts in order for multiple convictions to be sustained"); *People v. Beltran*, 327 Ill. App. 3d 685, 693, 765 N.E.2d 1071, 1078 (2002) ("Because the State portrayed the defendant's conduct as a single attack, multiple convictions were untenable."). Accordingly, the multiple convictions based on a single physical act violate the one-act, one-crime rule, and defendant has met his burden of establishing second-prong plain error.

¶ 38    When a one-act, one-crime violation occurs, a "sentence should be imposed on the more serious offense and the less serious offense should be vacated." *Artis*, 232 Ill. 2d at 170. "In determining which offense is the more serious, a reviewing court compares the relative

- 12 -

punishments prescribed by the legislature for each offense." *Artis*, 232 Ill. 2d at 170. Here, aggravated battery is a Class X felony (720 ILCS 5/12-3.05(e)(1), (h) (West 2020)), and aggravated discharge of a firearm is a Class 1 felony (720 ILCS 5/24-1.2(a)(2), (b) (West 2020)). We therefore vacate defendant's aggravated discharge of a firearm conviction because it is the less serious offense.

¶ 39                                    III. CONCLUSION

¶ 40          For the reasons stated, we vacate defendant's conviction of aggravated discharge of a firearm, but otherwise affirm the trial court's judgment.

¶ 41          Affirmed in part and vacated in part.