# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *In re Darius L.*, 2012 IL App (4th) 120035

---

| | |
|---|---|
| Appellate Court Caption | In re: DARIUS L., a Minor, THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, v. DARIUS L., Respondent-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-12-0035 |
| Argued<br>Filed | August 7, 2012<br>September 12, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Respondent minor was entitled to presentencing credit for the time he spent in his county's "treatment program" for juveniles, since the program constituted "custody" within the meaning of the Unified Code of Corrections for sentencing credit purposes. |
| Decision Under Review | Appeal from the Circuit Court of Adams County, No. 10-JD-90; the Hon. John C. Wooleyhan, Judge, presiding. |
| Judgment | Affirmed in part as modified and reversed in part; cause remanded with directions. |

| Counsel on Appeal | Michael J. Pelletier, Karen Munoz, and Jacqueline L. Bullard (argued), all of State Appellate Defender's Office, of Springfield, for appellant. |
|---|---|
| | Jonathan H. Barnard, State's Attorney, of Quincy (Patrick Delfino, Robert J. Biderman, and Anastacia R. Brooks (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE POPE delivered the judgment of the court, with opinion. Justices Steigmann and Knecht concurred in the judgment and opinion. |

## OPINION

¶ 1     In November 2010, the Adams County circuit court adjudicated respondent, Darius L. (born July 6, 1995), a delinquent minor pursuant to the Juvenile Court Act of 1987 (Juvenile Act) (705 ILCS 405/1-1 to 7-1 (West 2010)) when he pleaded guilty to retail theft (720 ILCS 5/16A-3(a) (West 2010)), a Class A misdemeanor, and the court sentenced him to a year's probation, including as a condition his successful completion of the Adams County Detention Center treatment program (Treatment Program). After his release from the Treatment Program, the court revoked respondent's probation twice. In September 2011, the trial court revoked respondent's probation a third time and resentenced him to the Department of Juvenile Justice (Department) for an indeterminate period. The court denied respondent's request for sentencing credit for time spent in the Treatment Program from November 16, 2010, to March 18, 2011, a total of 123 days. Additionally, the court did not award credit for time spent in the Adams County Detention Center (Detention Center) from July 12 to July 15, 2011.

¶ 2     Respondent appeals, arguing the circuit court erred when it denied sentencing credit for time spent in the Treatment Program. Specifically, respondent argues (1) the Treatment Program qualifies as "custody" for sentencing credit purposes; (2) the distinctions from Detention Center residents–namely (a) assignment to a detention center officer to work on "areas of concern," (b) "privileges" of chores, (c) supervised outings, and (d) home visits–do not affect Treatment Program residents' custody status; (3) the Juvenile Act requires he be awarded credit for time spent in custody; and (4) the Treatment Program is unauthorized "detention" beyond the 30-day limit in the Juvenile Act (705 ILCS 405/5-710(1)(a)(v) (West 2010)).

¶ 3     The State responds (1) respondent's appeal is moot; (2) respondent is attempting to appeal his underlying probation order; and (3) respondent does not show he could be prosecuted for "escape" from the Treatment Program.

¶ 4     We agree respondent is entitled to sentencing credit for time spent in the Treatment

Program as it is "custody" within the meaning of section 5-4.5-100(b) of the Unified Code of Corrections (Unified Code) (730 ILCS 5/5-4.5-100(b) (West 2010)) and reverse and remand with directions to accord him sentence credit for time served in the Treatment Program. We conclude we are without jurisdiction to reach respondent's contention that time served in the Treatment Program is unauthorized "detention." We affirm in part as modified, reverse in part, and remand with directions.

¶ 5                                                   I. BACKGROUND

¶ 6        In September 2010, the State filed a petition for adjudication of wardship pursuant to section 5-105 of the Juvenile Act (705 ILCS 405/5-105 (West 2010)) against respondent, alleging that on September 18, 2010, he committed one count of retail theft (first offense), a Class A misdemeanor (720 ILCS 5/16A-3(a) (West 2010)), and one count of theft over $300, a Class 3 felony (720 ILCS 5/16-1(b)(4) (West 2010)). In October 2010, respondent admitted retail theft as alleged in the September 2010 petition and the State dismissed the count of theft over $300. According to the factual basis, respondent took a package of stereo earbuds, valued less than $150, from a Quincy Family Dollar store without paying. In November 2010, the trial court held the initial sentencing hearing. The State introduced a social investigation report (SIR) pursuant to section 5-701 of the Juvenile Act (705 ILCS 405/5-701 (West 2010)). The State recommended respondent complete the Treatment Program and one year of probation. The court sentenced respondent to probation for one year and, as a condition of probation, ordered him to successfully complete the Treatment Program. Additionally, respondent was ordered to serve 30 days' home confinement after release from the Treatment Program and 30 days' (stayed) detention in the Detention Center.

¶ 7        The trial court ordered respondent to complete the Treatment Program under section 5-715(2)(e) of the Juvenile Act, which permits the court to order a minor "as a condition of probation *** [to] attend or reside in a facility established for the instruction or residence of persons on probation" (705 ILCS 405/5-715(2)(e) (West 2010)).

¶ 8        Respondent participated in the Treatment Program for 122 days from November 16, 2010, to March 18, 2011. At the February 15, 2011, review hearing, Rollie Thomas, respondent's probation officer, reported respondent was involved with counseling services at Recovery Resources and mental-health counseling at the Treatment Program facility. According to the record, at some time while at the Treatment Program, respondent refused to continue attending substance-abuse treatment at Recovery Resources. The record indicates respondent received a home visit on February 26, 2011, March 4, 2011, March 5, 2011, and March 11, 2011.

¶ 9        According to respondent's Treatment Program report dated April 14, 2011, his areas of concern were identified as "legal history, peer/community relations, and school." Respondent's goals were identified as (1) learning how to pick appropriate peer groups; (2) learning to respect authority figures; and (3) learning to set goals and what it takes to accomplish them. Further, the report shows respondent participated in drug and alcohol education and support groups provided by Addicts Victorious.

¶ 10       After respondent was released from the Treatment Program, the State filed supplemental

petitions alleging probation violations. In May and June 2011, the State filed supplemental petitions alleging respondent violated probation terms, and on June 6, 2011, the trial court modified the probation terms to place respondent on home confinement until further order of the court. On June 15, 2011, the State filed an amended supplemental petition restating the allegations set forth in the earlier June petition and alleging respondent violated the June 6 court order. At the June 20, 2011, hearing on the June petitions, respondent admitted the allegations contained in the June petitions. At the July 11, 2011, resentencing hearing, the State recommended respondent be resentenced to the Department. Respondent told the court he had a substance-abuse problem. The court amended respondent's probation order to require him to attend substance-abuse treatment at Gateway Foundation (Gateway) in Springfield, Illinois, and extended probation until July 10, 2012, including as a condition 30 days' home confinement once released from Gateway. Respondent remained in the Detention Center until July 15, 2011, when he was transferred to Gateway.

¶ 11    In August 2011, the State filed a third amended supplemental petition alleging respondent was unsuccessfully discharged from Gateway on August 16, 2011, and he failed to remain in home confinement. The same day a hearing was held on the third amended petition, and respondent admitted the allegations set forth in the petition. In September 2011, a third resentencing hearing was held and the court revoked respondent's probation and resentenced him to an indeterminate period of commitment in the Department. The court awarded credit for 122 days served. According to the written judgment, credit was awarded for time spent in the Detention Center as follows: September 18, 2010, to November 15, 2010; June 1, 2011, to June 6, 2011; June 17, 2011, to July 11, 2011; and August 19, 2011, to September 19, 2011. Respondent requested credit for 122 days spent in the Treatment Program from November 17, 2010, to March 18, 2011, but the court denied his request.

¶ 12    In October 2011, respondent filed a motion to reconsider, arguing the trial court erred in not granting credit for time served in the Treatment Program. In January 2012, the court held a hearing on the motion to reconsider. Respondent again argued he should receive credit for time served during the Treatment Program.

¶ 13    In the trial court, the parties stipulated to facts regarding the Treatment Program as follows. The Treatment Program is a 90-day program where the resident "works on areas of concern, such as schooling, appropriately interacting with or responding to authority, [and] drug use." Areas of concern are identified through a Youth Assessment and Screening Instrument (YASI) administered by the resident's probation officer. The detention center officer who works with the resident does not have special training for his or her Treatment Program duty.

¶ 14    The Treatment Program is housed in the Adams County Juvenile Detention Center. Detention Center residents are juveniles detained awaiting trial or sentencing on a delinquency petition or who have been sentenced to a period of detention. Treatment Program residents are housed together with Detention Center residents. Residents' rooms consist of a concrete slab with a mat, a pillow, and a combined sink and toilet. Treatment Program residents attend the same school as and dine with Detention Center residents. Treatment Program residents wear the same uniform as Detention Center residents. All residents participate in the same recreational area as one another. The outdoor recreational

area is either walled or fenced and the fence is 50 to 75 feet high and curves in toward the recreational area. Treatment Program minors are not permitted to walk through any door at the Detention Center without permission. The Detention Center is a locked facility. Treatment Program minors are locked in their cells at night.

¶ 15 Treatment Program residents may remain in the Treatment Program longer than 90 days if the resident fails to make adequate progress. Treatment Program residents are assessed on a scale of different graded levels. Treatment Program residents who "are making progress" may leave the Detention Center in the custody of a detention officer as a reward. Treatment Program residents may perform "privileges" such as cooking, washing dishes, and unloading a truck under the supervision of a detention officer. A Treatment Program resident may also be permitted to visit his home for a few hours with subsequent visits being increased to overnight visits. Generally speaking, there are no outings or home visits during the first 60 days in the Treatment Program. When a resident returns from a home visit, he is subject to a strip search, pat-down search, and urinalysis testing. Detention Center residents are not permitted these "privileges." Treatment Program residents do not have required activities additional to those of Detention Center residents.

¶ 16 The trial court denied respondent's motion to reconsider.

¶ 17 This appeal followed.

¶ 18                                II. ANALYSIS

¶ 19                                A. Mootness

¶ 20 We first consider the State's mootness argument. "An issue on appeal becomes moot where events occurring after the filing of the appeal render it 'impossible for the reviewing court to grant effectual relief to the complaining party.' " *In re Christopher K.*, 217 Ill. 2d 348, 358-59, 841 N.E.2d 945, 952 (2005) (quoting *People v. Roberson*, 212 Ill. 2d 430, 435, 819 N.E.2d 761, 764 (2004)). As respondent solely challenges his sentencing credit and has completed his Department sentence, this appeal is moot. Generally, this court will not resolve a moot question before it solely to establish precedent or govern future litigation. *In re Commitment of Hernandez*, 239 Ill. 2d 195, 201, 940 N.E.2d 1082, 1086 (2010). This court will address a moot question only if one of the exceptions to the mootness doctrine applies. *Id.* at 201-02, 940 N.E.2d at 1086.

¶ 21 Respondent maintains the public-interest exception applies. The public-interest exception requires (1) the existence of a question of public importance; (2) the desirability of an authoritative determination for the purpose of guiding public officers in the performance of their duties; and (3) the likelihood that the question will recur. *In re J.T.*, 221 Ill. 2d 338, 350, 851 N.E.2d 1, 8 (2006). These criteria must be clearly satisfied. *Id.* The public-interest exception considers potential recurrences to any person, not only the complaining party. *Holly v. Montes*, 231 Ill. 2d 153, 158, 896 N.E.2d 267, 271 (2008).

¶ 22 In our case, the first element is satisfied as respondent's appeal involves a question of available sentencing credit, undeniably presenting a question of public importance (see *J.T.*, 221 Ill. 2d at 350-51, 851 N.E.2d at 8; *In re B.L.S.*, 202 Ill. 2d 510, 519, 782 N.E.2d 217, 223 (2002) (an incarcerated juvenile's liberty is restrained just as effectively as that of an adult

offender)). The third element is also satisfied because this issue is likely to recur for other juveniles if Adams County public officials believe the Treatment Program does not qualify for sentencing credit.

¶ 23    The second element, desirability of an authoritative determination, is contested by the State. Respondent asserts the issue of whether the Juvenile Act requires sentencing credit for a program like the Treatment Program is a matter of first impression and has not been addressed in a reported Illinois case. As such, he states Adams County public officials "are in need of critical, timely guidance on the limits" of juvenile incarceration. The State disputes respondent's claim "about the necessity of [an] authoritative resolution for 'a matter of first impression' " because there is no conflicting appellate authority on this issue.

¶ 24    The State made a substantially similar argument about the requirement of conflicting precedent in the public-interest exception in *In re Shelby R.*, 2012 IL App (4th) 110191. There, we found the State's treatment of *Hernandez*, 239 Ill. 2d 195, 940 N.E.2d 1082, and *Christopher K.*, 217 Ill. 2d 348, 841 N.E.2d 945, too broad. Further, neither case, nor any case cited by the State, expressly states the existence of conflicting precedent is a required element of the public-interest exception. The State's argument is circular and would effectively foreclose development of the law in cases of short duration but otherwise of important public interest. As a key purpose of the public-interest exception is to provide guidance to public officers, we conclude we may do so in this case.

¶ 25                                   B. Merits

¶ 26    We next consider respondent's arguments the trial court erred when it denied sentencing credit for time spent in the Treatment Program. Respondent argues he is entitled to credit for 122 days spent from November 17, 2010, to March 18, 2011, in the Treatment Program. Additionally, respondent argues he is entitled to five days' credit for time spent in the Detention Center from July 11 to July 15, 2011, between his July 2011 sentencing and transfer to Gateway. (The State concedes respondent is entitled to four days' credit from July 12 to July 15, 2011.)

¶ 27    The State responds this court lacks jurisdiction because respondent is attempting to appeal his November 2010 probation order (ordering the Treatment Program), which he did not timely appeal. Additionally, the State asserts a necessary component of "custody" is the potential to be prosecuted for escape (720 ILCS 5/31-6(b) (West 2010)), and section 5-4.5-100 of the Unified Code (730 ILCS 5/5-4.5-100 (West 2010)) makes sentencing credit permissive for time spent in the Treatment Program. We address the parties' contentions in turn.

¶ 28                            1. *Standard of Review*

¶ 29    As respondent's challenge requires this court to construe the language of several sentencing credit statutes, our review is *de novo*. *In re Rodney S.*, 402 Ill. App. 3d 272, 285, 932 N.E.2d 588, 600 (2010).

¶ 30    The primary objective in construing a statute is to ascertain and give effect to the

legislative intent, and the most reliable indicator of that intent is the plain and ordinary meaning of the statutory language itself. *People v. Beachem*, 229 Ill. 2d 237, 243, 890 N.E.2d 515, 519 (2008). The statute should be considered in its entirety in light of the subject it addresses and the legislature's objective in enacting it. *In re Jerome S.*, 2012 IL App (4th) 100862, ¶ 10, 968 N.E.2d 769. This court will "not depart from the plain language of the statute by reading into it exceptions, limitations, or conditions that conflict with the expressed intent." *People v. Perry*, 224 Ill. 2d 312, 323-24, 864 N.E.2d 196, 204 (2007). Under the doctrine of *in pari materia*, two or more statutes concerning the same subject must be construed together to produce a harmonious whole. *People v. Rinehart*, 2012 IL 111719, ¶ 26, 962 N.E.2d 444. Any ambiguities in a penal statute are construed in favor of the accused. *Jerome S.*, 2012 IL App (4th) 100862, ¶ 10, 968 N.E.2d 769.

¶ 31      2. *State's Argument Respondent Is Appealing a Probation Order*

¶ 32      We find unpersuasive the State's contention respondent is attempting to appeal his November 2010 probation order. Generally, " ' "[w]hen no direct appeal is taken from an order of probation and the time for appeal has expired, a reviewing court is precluded from reviewing the propriety of that order in an appeal from a subsequent revocation of that probation, unless the underlying judgment of conviction is void." ' " *People v. Felton*, 385 Ill. App. 3d 802, 804, 896 N.E.2d 910, 912-13 (2008) (quoting *People v. Gregory*, 379 Ill. App. 3d 414, 418, 883 N.E.2d 762, 765-66 (2008), quoting *People v. Johnson*, 327 Ill. App. 3d 252, 256, 762 N.E.2d 1180, 1183 (2002)). When the circuit court revokes probation, a new sentence is imposed. *Felton*, 385 Ill. App. 3d at 804, 896 N.E.2d at 913. In this case, respondent is appealing the court's September 2011 denial of sentencing credit on his Department commitment order. See *In re Gennell C.*, 2012 IL App (4th) 110021, ¶ 9, 968 N.E.2d 1258 (dispositional order in a juvenile delinquency proceeding is a final order). As his appeal from his resentencing order was timely filed, we may consider whether respondent is entitled to sentencing credits.

¶ 33      However, we do not consider whether the Treatment Program violates the 30-day limitation on detention (705 ILCS 405/5-710(1)(a)(v) (West 2010)), as respondent did not appeal the November 2010 probation order placing him in the Treatment Program. As such, respondent may not use this appeal to mount a collateral attack on his underlying probation order conditions.

¶ 34      3. *The Juvenile Act Sentencing Credit Requirements*

¶ 35      While the Juvenile Act expressly addresses sentencing credit for juveniles placed in detention (705 ILCS 405/5-710(1)(a)(v), (1)(b) (West 2010)), the supreme court has applied the broader adult sentencing credit requirements of section 5-8-7(b), now section 5-4.5-100(b), of the Unified Code to juveniles (*J.T.*, 221 Ill. 2d at 352, 851 N.E.2d at 9). A juvenile who is committed to the Department for an indeterminate term is entitled to predisposition sentencing credit "for any part of a day for which he spent some time in custody." *In re Rakim V.*, 398 Ill. App. 3d 1057, 1059, 925 N.E.2d 339, 341 (2010); *J.T.*, 221 Ill. 2d at 353, 851 N.E.2d at 9-10; see also *Jabari C.*, 2011 IL App (4th) 100295, ¶ 35, 962 N.E.2d 8

(juvenile entitled to sentencing credit for day of arrest although not admitted to detention center). As respondent is entitled to credit for any time spent "in custody" as a condition of probation (*People v. Scheib*, 76 Ill. 2d 244, 251, 390 N.E.2d 872, 875 (1979); *People v. Dieu*, 298 Ill. App. 3d 245, 250, 698 N.E.2d 663, 666 (1998)), the fact the trial court ordered respondent to complete the Treatment Program as a condition of probation under section 5-715(2)(e) of the Juvenile Act (705 ILCS 405/5-715(2)(e) (West 2010)) does not affect our analysis of whether he is entitled to sentencing credit.

¶ 36    Section 5-4.5-100(b) of the Unified Code provides, in pertinent part:

"[An] offender shall be given credit on the determinate sentence or maximum term and the minimum period of imprisonment *for time spent in custody as a result of the offense for which the sentence was imposed* ***. Except when prohibited by subsection (d), the trial court may give credit to the defendant for time spent in home detention, or when the defendant has been confined for psychiatric or substance abuse treatment prior to judgment, if the court finds that the detention or confinement was custodial." (Emphasis added.) 730 ILCS 5/5-4.5-100(b) (West 2010).

¶ 37    Based on prior precedent and section 5-4.5-100(b) of the Unified Code, we need not determine whether the Treatment Program qualifies as "detention" for section 5-710(a)(v) of the Juvenile Act as respondent urges us. We need only determine if this program qualifies as "custody" for sentencing credit purposes.

¶ 38                                    a. Custody

¶ 39    The Illinois Supreme Court has defined "custody" for purposes of sentencing credit as "the legal duty to submit" to legal authority and not actual physical confinement. *Beachem*, 229 Ill. 2d at 252, 890 N.E.2d at 524; *Jabari C.*, 2011 IL App (4th) 100295, ¶¶ 34-35, 962 N.E.2d 8 (holding juvenile had a " 'legal duty to submit' to the control of the arresting officer" and was entitled to sentencing credit). In *Beachem*, the supreme court held the defendant was in custody for presentencing credit purposes where he was assigned to the Cook County Sheriff's Day Reporting Center program. *Beachem*, 229 Ill. 2d at 239, 253, 890 N.E.2d at 517, 524. The court stated the plain language definition of custody is "very expansive" and "may encompass varying degrees of state control." *Beachem*, 229 Ill. 2d at 245, 890 N.E.2d at 520. Finding the sentencing credit statute ambiguous, the court examined prior cases to conclude it is the "legal duty to submit" that defines a defendant's custodial status for credit purposes. *Beachem*, 229 Ill. 2d at 252-53, 890 N.E.2d at 524. The court noted the defendant "had a legal duty to submit to [the sheriff's] authority at any time and for any reason" as defendant had "no right to be in the Program and had no recourse under the statutes of this state if the sheriff decided to reincarcerate him, or even to terminate the entire Program and reincarcerate all the participants." *Beachem*, 229 Ill. 2d at 253, 890 N.E.2d at 524. Further, the *Beachem* court noted even if physical confinement was required to constitute custody, Beachem was subject to limited confinement because (1) services were provided at the discretion of the sheriff; (2) defendant was not free to come and go as he pleased; (3) defendant was not free to structure his day as he saw fit; (4) defendant was obligated to report at an established time and participate in a state-run program; and (5)

defendant could not decline to attend the program. *Beachem*, 229 Ill. 2d at 253, 890 N.E.2d at 524-25. Additionally, the court found the fact defendant's failure to report to the program could result in an escape prosecution supported its conclusion. *Beachem*, 229 Ill. 2d at 254, 890 N.E.2d at 525. The court stated, " 'A defendant must necessarily be in "custody" while participating in these programs if he is to be held accountable for "escape" for failure to comply with the terms of the programs.' " *Beachem*, 229 Ill. 2d at 254, 890 N.E.2d at 525 (quoting *People v. Campa*, 217 Ill. 2d 243, 259, 840 N.E.2d 1157, 1168 (2005)).

¶ 40                    b. The Treatment Program and Sentencing Credit

¶ 41        Participants in the Treatment Program had a legal duty to submit to state authority. We take judicial notice of details about the Treatment Program as set forth in the companion case, *In re Christopher P.*, 2012 IL App (4th) 100902. As there, respondent had a legal duty to submit to state authority while in the Treatment Program and was in "custody" for sentencing credit purposes. Important to our conclusion are the following facts: (1) respondent was court-ordered to participate in this county-run program; (2) respondent was held beyond the scheduled 90-day period at the discretion of Detention Center officials (not the trial court); (3) respondent's freedom of movement was restricted by locked external and internal doors throughout the Detention Center, including lockdown in his cell at night; (4) respondent was subject to the same policies and conditions as Detention Center residents (who are entitled to sentencing credit); and (5) respondent resided in the Detention Center completely integrated with Detention Center residents, *i.e.*, attending school side-by-side with Detention Center residents, eating meals with Detention Center residents, and wearing the same blue uniforms as Detention Center residents. See also *People v. Ramos*, 138 Ill. 2d 152, 159, 561 N.E.2d 643, 647 (1990) (supreme court noting characteristics of institutional confinement include regimented structure, surveillance, and lack of privacy). As Treatment Program residents are either restrained within the Detention Center while performing chores or restrained by a detention officer while on an outing, the fact Treatment Program residents receive such "privileges" does not affect our analysis. While physical confinement is not required for "custody" for sentencing credit purposes, several facts further support our determination respondent had a legal duty to submit to state authority: (1) this program is housed inside the Adams County Detention Center and (2) Treatment Program residents are under the state's physical control.

¶ 42        The State argues the Treatment Program cannot be considered custody because respondent fails to show he could be prosecuted for escape if he chose to leave the Detention Center. We are not persuaded. The State's contention "the only official control over respondent derived from the probation order requirements for him to reside in and follow all rules" of the Detention Center and as such respondent might not "be held directly responsible for escape offenses" is unpersuasive. If respondent failed to complete the Treatment Program as a term of his probation, he would be in violation of the probation order and subject to a probation revocation proceeding under section 5-720 of the Juvenile Act (705 ILCS 405/5-720 (West 2010)). Second, we note the Juvenile Act would permit the trial court to consider a Treatment Program resident's unauthorized departure from the program in modifying the minor's probation disposition. See 705 ILCS 405/5-710(3) (West 2010) (sentencing order

-9-

is subject to modification until final closing or commitment to Department); *People v. Taylor*, 221 Ill. 2d 157, 181, 850 N.E.2d 134, 147 (2006) ("Because the circuit court in juvenile proceedings maintains jurisdiction until the minor turns 21 years of age, the court would be free to exercise its discretion in modifying a minor's term of commitment, when possible, for any infraction involving a minor leaving a detention facility without authorization."). Third, we find unpersuasive the State's reading of *Beachem* for the proposition potential prosecution for the offense of escape is a "necessary component" of custody. In *Campa*, 217 Ill. 2d 243, 840 N.E.2d 1157, the case *Beachem* quoted in its escape discussion, the supreme court determined the Cook County Sheriff's Day Reporting Center qualified as "custody" for speedy-trial purposes. There, the supreme court found support for its conclusion in the fact the defendant could be prosecuted for escape if he failed to report to the Day Reporting Center. *Campa*, 217 Ill. 2d at 255, 840 N.E.2d at 1165. It stated, "Since escape is the unauthorized departure from custody [citation], a defendant cannot escape unless he is first in custody." *Campa*, 217 Ill. 2d at 259, 840 N.E.2d at 1168. The court found such additional support in *Beachem* as well. *Beachem*, 229 Ill. 2d at 254, 890 N.E.2d at 525. Neither case stated escape is a necessary component of custody as the State suggests. Both cases found support in the following logical syllogism: If (1) escape is the departure from "custody" and (2) one can be prosecuted for escape for failure to report to the Day Reporting Center, then (3) required attendance at the Day Reporting Center is "custody." However, assuming *arguendo* escape is an element of custody, respondent could very well be "held directly responsible" if he so chose to escape or leave the Treatment Program. Further, these direct repercussions support our conclusion respondent had a "legal duty to submit" to state authority while at the Treatment Program. In the companion case, *In re Christopher P.*, 2012 IL App (4th) 100902, the respondent was placed in solitary confinement for rules infractions while he was in the Treatment Program.

¶ 43    Last, the State argues if the Treatment Program is custodial, then sentencing credit is permissive under section 5-4.5-100 of the Unified Code. Section 5-4.5-100(b) of the Unified Code provides in pertinent part:

> "Except when prohibited by subsection (d), the trial court *may give credit* to the defendant for time spent in home detention, or when the defendant has been confined for psychiatric or *substance abuse treatment* prior to judgment, if the court finds that the detention or confinement was custodial." (Emphases added.) 730 ILCS 5/5-4.5-100(b) (West 2010).

The permissive language of section 5-4.5-100(b) of the Unified Code refers to "psychiatric or substance abuse treatment." The trial court invoked section 5-715(2)(e) of the Juvenile Act to authorize respondent's placement in the Treatment Program, not section 5-715(2)(d) of the Juvenile Act (705 ILCS 405/5-715(2)(d) (West 2010)), which expressly provides, as a condition of probation, the juvenile may be required to undergo medical, psychiatric, or drug and alcohol addiction treatment. See also 705 ILCS 405/5-710(1)(a)(iii), (1)(c) (West 2010) (providing for substance-abuse treatment); 705 ILCS 405/5-740(1) (West 2010) (naming alternative placements for delinquent minors). From the record, we know treatment coordinators are not licensed in substance-abuse treatment, and the Treatment Program is not specifically designed for psychiatric or substance-abuse treatment but general "areas of

concern." Further supporting our conclusion this program is not a substance-abuse treatment program is the fact respondent was later ordered to complete substance-abuse treatment at Gateway. While labeled a "treatment program," this program does not fall within the permissive language of section 5-4.5-100 of the Unified Code.

¶ 44                        C. Validity of Treatment Program

¶ 45       Respondent urges us to find the Treatment Program and its 90-day scheduled length, which was actually 122 days for respondent, is in conflict with the 30-day detention limitation in the Juvenile Act (705 ILCS 405/5-710(1)(a)(v) (West 2010)). Respondent appears to assert we need to find the Treatment Program is "detention" (see 705 ILCS 405/5-710(1)(a)(v) (West 2010) ("A minor shall not be deprived of credit for time spent in detention ***."); 705 ILCS 405/5-105(5) (West 2010) (definition)) to determine he is entitled to sentencing credit; but under *Rakim V.* and *Jabari C.*, we need only determine whether the Treatment Program is "custody." Our determination respondent is entitled to sentencing credit upon commitment to the Department does not require us to determine whether this 90-day Treatment Program order does in fact violate the 30-day limitation of section 5-710(1)(a)(v) of the Juvenile Act, as we are not called upon to determine whether it is "detention" for purposes of the Juvenile Act but merely "custody." See *Campa*, 217 Ill. 2d at 270, 840 N.E.2d at 1174 ("A court of review 'also ordinarily will not consider issues where they are not essential to the disposition of the cause or where the result will not be affected regardless of how the issues are decided.' " (quoting *Barth v. Reagan*, 139 Ill. 2d 399, 419, 564 N.E.2d 1196, 1205 (1990))). We conclude we are without jurisdiction to review the November 2010 Treatment Program condition of probation on review of sentence imposed in September 2011 after revocation.

¶ 46                        D. Respondent's Credits

¶ 47       Respondent argues he is entitled to five days' credit for time spent at the Detention Center from July 11 to July 15, 2011, while he was waiting for transfer to Gateway. The State concedes respondent is entitled to the days he remained in detention from July 12 to July 15, 2011. On July 11, 2011 respondent was transported from the Detention Center to the sentencing hearing where he was ordered to undergo substance-abuse treatment at Gateway. He was housed at the Detention Center until a bed became available at Gateway and he was transferred there on July 15, 2011. Respondent received credit for July 11, 2011, in the September 2011 order. We accept the State's concession and award four days' credit for the period July 12 to July 15, 2011.

¶ 48       On the merits of this appeal, respondent argues he is also entitled to credit for time spent in the Treatment Program from November 17, 2010, to March 18, 2011. The record shows respondent did not receive credit for November 16, 2010, the day of sentence. Ordinarily, respondent would not be entitled to sentencing credit for the day of sentencing. See *People v. Williams*, 239 Ill. 2d 503, 509, 942 N.E.2d 1257, 1261 (2011) (not entitled to presentencing credit for the day of sentence). Here, respondent is entitled to sentencing credit for the day he was sentenced to the Treatment Program as he will not otherwise receive credit

for that day for his eventual sentence to the Department. See *Williams*, 239 Ill. 2d at 509, 942 N.E.2d at 1261 (day in custody should be counted once "but only once"). Respondent is entitled to 123 days' sentencing credit for time spent in the Treatment Program from November 16, 2010, to March 18, 2011, toward his September 2011 commitment order. The record shows the court improperly awarded credit for September 19, 2011, the day of respondent's commitment to the Department; he is not entitled to credit for this day. In sum, respondent is entitled to an additional 126 days' credit for 123 days in the Treatment Program, 4 days in the Detention Center from July 12 to July 15, 2011, less 1 day credit for September 19, 2011.

¶ 49                                        III. CONCLUSION

¶ 50        For the foregoing reasons, we reverse the denial of sentence credit, affirm the remainder of the judgment as modified, and remand with directions to accord respondent minor an additional 126 days' sentencing credit.

¶ 51        Affirmed in part as modified and reversed in part; cause remanded with directions.