# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *In re Christopher P.*, 2012 IL App (4th) 100902

---

| | |
|---|---|
| Appellate Court Caption | In re: CHRISTOPHER P., a Minor, THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, v. CHRISTOPHER P., Respondent-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-10-0902 |
| Argued<br>Filed | August 7, 2012<br>September 12, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Respondent minor was entitled to presentencing credit for the time he spent in his county's "treatment program" for juveniles, since the program constituted "custody" for sentencing credit purposes. |
| Decision Under Review | Appeal from the Circuit Court of Adams County, No. 09-JD-16; the Hon. John C. Wooleyhan, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part; cause remanded with directions. |

Counsel on
Appeal

Michael J. Pelletier, Karen Munoz, and Jacqueline L. Bullard (argued), all of State Appellate Defender's Office, of Springfield, for appellant.

Jonathan H. Barnard, State's Attorney, of Quincy (Patrick Delfino, Robert J. Biderman, and Anastacia R. Brooks (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel

JUSTICE POPE delivered the judgment of the court, with opinion.

Justices Steigmann and Knecht concurred in the judgment and opinion.

## OPINION

¶ 1    In April 2009, the Adams County circuit court adjudicated respondent, Christopher P. (born April 7, 1994), a delinquent minor pursuant to the Juvenile Court Act of 1987 (Juvenile Act) (705 ILCS 405/1-1 to 7-1 (West 2008)) on the grounds he committed the offense of theft of property not exceeding $300 in value, a Class A misdemeanor (720 ILCS 5/16-1(a)(1)(A), (b)(1) (West 2008)). In May 2009, the court sentenced respondent to a year's probation with conditions including successful completion of the Adams County Juvenile Detention Center treatment program (Treatment Program). After his release from the Treatment Program, the court revoked respondent's probation twice. In September 2009, the trial court revoked respondent's probation a third time and resentenced him to the Department of Juvenile Justice (Department). The court denied respondent's request for presentencing credit for time spent in the Treatment Program from May 18, 2009, to September 11, 2009, a total of 117 days.

¶ 2    Respondent appeals, arguing the trial court erred when it denied sentencing credit for time spent in the Treatment Program. Specifically, respondent argues (1) the Treatment Program qualifies as "custody" for sentencing credit purposes; (2) the distinctions from Adams County Juvenile Detention Center (Detention Center) residents–namely (a) assignment to a "treatment coordinator," (b) "privileges" of chores, (c) supervised outings, and (d) home visits–do not affect Treatment Program residents' custody status; (3) the Juvenile Act requires they be awarded credit for time spent in custody; and (4) the Treatment Program is unauthorized "detention" beyond the 30-day limit in the Juvenile Act (705 ILCS 405/5-710(1)(a)(v) (West 2008)).

¶ 3    The State responds (1) respondent's appeal is moot; (2) respondent is attempting to appeal his underlying probation order; (3) respondent is not entitled to sentencing credit because the court's September 2010 order was a "temporary" commitment to the Department; and (4) respondent does not show the Treatment Program was not a "county juvenile impact incarceration program" (55 ILCS 5/3-6039(f) (West 2008)).

¶ 4    We agree respondent is entitled to sentencing credit for time spent in the Treatment Program as it is "custody" within the meaning of section 5-8-7(b) of the Unified Code of Corrections (Unified Code) (730 ILCS 5/5-8-7(b) (West 2008) (now 730 ILCS 5/5-4.5-100(b) (West 2010) (eff. July 1, 2009))); and we reverse and remand with directions to accord him sentence credit for time served in the Treatment Program. We conclude we are without jurisdiction to reach respondent's contention that time served in the Treatment Program is unauthorized "detention." We affirm in part, reverse in part, and remand with directions.

¶ 5                                    I. BACKGROUND

¶ 6    On March 25, 2009, the State filed a petition for adjudication for wardship of respondent pursuant to section 5-105 of the Juvenile Act (705 ILCS 405/5-105 (West 2008)) on the grounds he committed theft (720 ILCS 5/16-1(a)(1)(A) (West 2008)) on November 24, 2008. Respondent had been under informal supervision but the petition was filed based on his lack of progress. In April 2009, respondent admitted the allegations contained in the March 2009 delinquency petition. According to the factual basis, respondent took a coat that did not belong to him from another student's locker at Quincy Junior High School. The school dean observed respondent wearing the coat and respondent admitted he took the coat from another student's locker. In May 2009, the trial court held the first sentencing hearing. A social investigation report (SIR) pursuant to section 5-701 of the Juvenile Act (705 ILCS 405/5-701 (West 2008)) was introduced. The court placed respondent on one year's probation and ordered him to complete the Treatment Program and serve 30 days' home confinement and 30 days (stayed) in the Detention Center. The court ordered respondent to complete the Treatment Program under section 5-715(2)(e) of the Juvenile Act, which permits the court to order a minor "as a condition of probation *** [to] attend or reside in a facility established for the instruction or residence of persons on probation" (705 ILCS 405/5-715(2)(e) (West 2008)).

¶ 7    Respondent participated in the Treatment Program for 117 days from May 18, 2009, to September 11, 2009. According to the record, while in the Treatment Program, respondent received room confinement on at least nine occasions. One such confinement was for 24 hours. Additionally, respondent completed at least two home visits while in the Treatment Program, but the record is unclear as to the length and whether there were subsequent visits.

¶ 8    After respondent's release from the Treatment Program, the State filed supplemental petitions alleging probation violations. In November 2009, the State filed a first supplemental petition; and in December 2009, by agreement of the parties, the trial court ordered respondent to complete substance-abuse treatment at the Gateway Foundation (Gateway) in Springfield, Illinois. In April 2010, the State filed a second supplemental petition, alleging respondent violated his probation by running away from Gateway on April 6, 2010. In May 2010, the trial court extended respondent's probation until November 2010 and ordered 30 days' home confinement.

¶ 9    In August 2010, the State filed a third supplemental petition, alleging respondent violated his probation by committing criminal trespass to property (720 ILCS 5/21-3(a)(2) (West

2010)). Respondent admitted violating probation. In September 2010, the trial court held a third sentencing hearing. The trial court sentenced respondent to the Department, explaining this was "for evaluation purposes for him to complete a psychiatric and psychological examination" and that he would "be temporarily committed to the [Department] for a period of about 90 days to allow that evaluation to be completed." The court ordered respondent be returned to the court on December 14, 2010. The court credited respondent for time served in custody at the Detention Center as follows: March 25, 2009, to May 12, 2009; December 1, 2009, to December 28, 2009; April 8, 2010, to May 4, 2010; and August 4, 2010, to September 13, 2010.

¶ 10    In October 2010, respondent's counsel filed a motion to reconsider, asserting he was entitled to an additional 7 days' credit for time served in the Detention Center from September 13, 2010, to September 22, 2010, and 117 days' credit for time served in the Treatment Program from May 18, 2009, to September 11, 2009. At the November 2010 hearing on the motion, respondent's counsel argued the Treatment Program was "custody" for sentencing credit purposes and respondent was entitled to 117 days' credit for time spent in the Treatment Program. Counsel argued "regardless of the designation, any treatment center time is time spent in custody."

¶ 11    Based on evidence presented at the motion to reconsider hearing and previously in respondent's case, the Treatment Program is summarized as follows. The Treatment Program is a "90-day behavior modification program" designed "towards helping [residents] avoid future trouble with the law." Probation officers identify Treatment Program residents' individual needs through a Youth Assessment and Screening Instrument (YASI). The probation officer discusses the resident's YASI with the resident's Treatment Program treatment coordinator. Treatment coordinators are also Adams County detention officers and do not have special training or credentials for their Treatment Program duty. Treatment coordinators are assigned to residents on a rotating basis to the next resident ordered to complete the Treatment Program. The Treatment Program programming includes physical recreation and classes. The Treatment Program curriculum materials consist of computer programs, pamphlets, and other materials selected by the treatment coordinator. Treatment Program residents do not have required activities in addition to those of Detention Center residents.

¶ 12    Treatment Program residents are given a target release date, but they may remain in the Treatment Program longer than 90 days if the resident fails to make adequate progress. Treatment Program residents are assessed on a scale of different graded levels from, at least, "A" to "D" with "A" being the highest level. Residents earn points for day-to-day activities and complying with expectations. Treatment Program residents on A and B levels may be permitted to perform chores such as cooking, dish washing, and unloading a truck. Residents who have completed at least six to eight weeks in the program and are on Level B are allowed to participate in a supervised outing (supervised by a treatment coordinator and another Detention Center staff member). Treatment Program residents who, after at least two months, are on Level B are also allowed a home visit. Home visits are to "reintegrate the youth into the family home." A first home visit may last 6 to 8 hours with successive home visits lasting up to 24 to 48 hours. Residents on home visits are required to follow Detention

Center rules and regulations. When a resident returns from a home visit, he is subject to a strip search, pat-down search, and urinalysis testing. During the strip search, the juvenile stands in the nude, raises his arms, and spreads his legs to ensure nothing is tucked underneath his genitals. Detention Center residents are not permitted home visits.

¶ 13    Treatment Program residents have the option of community-based mental-health services or a therapist employed by the Detention Center. This therapist is available to other residents who do not have another counselor. Christopher received counseling from the Detention Center therapist.

¶ 14    The Treatment Program is housed in the Adams County juvenile detention center. Detention Center residents are juveniles detained awaiting trial or sentencing on a delinquency petition or sentenced to a period of detention. Treatment Program residents are subject to the same housing conditions as Detention Center residents and are not segregated from them. Residents' rooms are locked and consist of a concrete slab with a mat, a pillow, and a combined sink and toilet. Treatment Program residents attend the same school as and dine together with Detention Center residents. Treatment Program residents wear the same navy blue uniform as the other residents. All residents participate in the same recreational areas as one another. The outdoor area is either walled or fenced and the fence is 50 to 75 feet high and curves in toward the recreational area. Treatment Program minors are not permitted to walk through any door at the Detention Center without permission. The Detention Center is a locked facility, and Treatment Program residents are not freely permitted to leave the Detention Center.

¶ 15    The trial court denied respondent's motion to award credit for 117 days spent in the Treatment Program, May 18, 2009, to September 11, 2009. The court explained its reasoning as follows:

> "It is clear under the law that time that a minor is in a treatment program is not considered time that he is [']detained['] as that term is defined by the statute. If that were so, then a minor could never be placed in any treatment program such as the one at the detention center for a period longer than 30 days in order to comply with the statute. I don't believe that's the law in the State of Illinois. So time in the treatment program is actually a part of a condition in this case of an order of probation that the minor was under at that time. It was not detention time; it was part of his order of probation."

The court awarded respondent additional credit for time in the Detention Center from September 13 to September 22, 2010.

¶ 16    On November 12, 2010, respondent filed a notice of appeal with the trial court. After the notice of appeal was filed, on December 13, 2010, the trial court vacated respondent's commitment to the Department and extended probation for 90 days to March 14, 2011.

¶ 17                                    II. ANALYSIS

¶ 18                                    A. Mootness

¶ 19    We first consider the State's mootness argument. "An issue on appeal becomes moot where events occurring after the filing of the appeal render it 'impossible for the reviewing

court to grant effectual relief to the complaining party.' " *In re Christopher K.*, 217 Ill. 2d 348, 358-59, 841 N.E.2d 945, 952 (2005) (quoting *People v. Roberson*, 212 Ill. 2d 430, 435, 819 N.E.2d 761, 764 (2004)). As respondent solely challenges his sentencing credit and has completed his Department sentence, this appeal is moot. Generally, this court will not resolve a moot question before it solely to establish precedent or govern future litigation. *In re Commitment of Hernandez*, 239 Ill. 2d 195, 201, 940 N.E.2d 1082, 1086 (2010). This court will address a moot question only if one of the exceptions to the mootness doctrine applies. *Id.* at 201-02, 940 N.E.2d at 1086.

¶ 20    Respondent maintains the public-interest exception applies. The public-interest exception requires (1) the existence of a question of public importance; (2) the desirability of an authoritative determination for the purpose of guiding public officers in the performance of their duties; and (3) the likelihood that the question will recur. *In re J.T.*, 221 Ill. 2d 338, 350, 851 N.E.2d 1, 8 (2006). These criteria must be clearly satisfied. *Id.* The public-interest exception considers potential recurrences to any person, not only the complaining party. *Holly v. Montes*, 231 Ill. 2d 153, 158, 896 N.E.2d 267, 271 (2008).

¶ 21    In our case, the first element is satisfied as respondent's appeal involves a question of available sentencing credit, undeniably presenting a question of public importance (see *J.T.*, 221 Ill. 2d at 350-51, 851 N.E.2d at 8; *In re B.L.S.*, 202 Ill. 2d 510, 519, 782 N.E.2d 217, 223 (2002) (an incarcerated juvenile's liberty is restrained just as effectively as that of an adult offender)). The third element is also satisfied because this issue is likely to recur for other juveniles if Adams County public officials believe the Treatment Program does not qualify for sentencing credit.

¶ 22    The second element, desirability of an authoritative determination, is contested by the State. Respondent asserts the issue of whether the Juvenile Act requires sentencing credit for a program like the Treatment Program is a matter of first impression and has not been addressed in a reported Illinois case. As such, he states Adams County public officials "are in need of critical, timely guidance on the limits" of juvenile incarceration. The State disputes respondent's claim "about the necessity of [an] authoritative resolution for 'a matter of first impression' " because there is no conflicting appellate authority on this issue.

¶ 23    The State made a substantially similar argument about the requirement of conflicting precedent in *In re Shelby R.*, 2012 IL App (4th) 110191. Again we find the State's treatment of *Hernandez*, 239 Ill. 2d 195, 940 N.E.2d 1082, and *Christopher K.*, 217 Ill. 2d 348, 841 N.E.2d 945, too broad. Further, neither case, nor any case cited by the State, expressly states the existence of conflicting precedent is a required element of the public-interest exception. The State's argument is circular and would effectively foreclose development of the law in cases of short duration but otherwise of important public interest. As a key purpose of the public-interest exception is to provide guidance to public officers, we conclude we may do so in this case.

¶ 24                                          B. Merits
¶ 25                                   1. *Standard of Review*
¶ 26    As respondent's challenge requires this court to construe the language of several

sentencing credit statutes, our review is *de novo*. *In re Rodney S.*, 402 Ill. App. 3d 272, 285, 932 N.E.2d 588, 600 (2010).

¶ 27    The primary objective in construing a statute is to ascertain and give effect to the legislative intent, and the most reliable indicator of that intent is the plain and ordinary meaning of the statutory language itself. *People v. Beachem*, 229 Ill. 2d 237, 243, 890 N.E.2d 515, 519 (2008). The statute should be considered in its entirety in light of the subject it addresses and the legislature's objective in enacting it. *In re Jerome S.*, 2012 IL App (4th) 100862, ¶ 10, 968 N.E.2d 769. This court will "not depart from the plain language of the statute by reading into it exceptions, limitations, or conditions that conflict with the expressed intent." *People v. Perry*, 224 Ill. 2d 312, 323-24, 864 N.E.2d 196, 204 (2007). Under the doctrine of *in pari materia*, two or more statutes concerning the same subject must be construed together in order to produce a harmonious whole. *People v. Rinehart*, 2012 IL 111719, ¶ 26, 962 N.E.2d 444. Any ambiguities in a penal statute are construed in favor of the accused. *Jerome S.*, 2012 IL App (4th) 100862, ¶ 10, 968 N.E.2d 769.

¶ 28                            2. *The Parties' Additional Arguments*

¶ 29    Before we address the ultimate sentencing credit issue, we first address the parties' preliminary arguments.

¶ 30                    a. Appeal From Respondent's May 2009 Probation Order

¶ 31    We find unpersuasive the State's contention respondent is attempting to appeal his May 2009 probation order. Generally, " ' "[w]hen no direct appeal is taken from an order of probation and the time for appeal has expired, a reviewing court is precluded from reviewing the propriety of that order in an appeal from a subsequent revocation of that probation, unless the underlying judgment of conviction is void." ' " *People v. Felton*, 385 Ill. App. 3d 802, 804, 896 N.E.2d 910, 912-13 (2008) (quoting *People v. Gregory*, 379 Ill. App. 3d 414, 418, 883 N.E.2d 762, 765-66 (2008), quoting *People v. Johnson*, 327 Ill. App. 3d 252, 256, 762 N.E.2d 1180, 1183 (2002)). When the circuit court revokes probation, a new sentence is imposed. *Felton*, 385 Ill. App. 3d at 804, 896 N.E.2d at 913. In this case, respondent is appealing the court's denial of sentencing credit on his Department commitment order. See *In re Gennell C.*, 2012 IL App (4th) 110021, ¶ 9, 968 N.E.2d 1258 (dispositional order in a juvenile delinquency proceeding is a final order). As his appeal from the resentencing order was timely filed, we may consider whether respondent is entitled to sentencing credits.

¶ 32    Respondent argues the Treatment Program violates the 30-day limitation on detention (705 ILCS 405/5-710(1)(a)(v) (West 2008)). We conclude we are without jurisdiction to address this issue as respondent did not appeal the May 2009 probation order placing him in the Treatment Program, despite having argued at sentencing commitment to a 90-day Treatment Program in the Detention Center was not an authorized disposition under the Juvenile Act. As such, respondent may not use this appeal to mount a collateral attack on his underlying probation order conditions.

¶ 33                     b. "Temporary" Commitment Order

¶ 34       The State correctly points out the trial court orally stated respondent was to be "evaluated" by the Department and argues the commitment order was "temporary." The State argues if respondent's commitment was temporary, he is not entitled to sentencing credit and his appeal should be dismissed. Respondent argues his commitment to the Department was for an indeterminate period and the September 2010 order was final. We agree with respondent.

¶ 35       By statute, a delinquent minor's commitment to the Department "shall be for an indeterminate term" except for minors adjudged delinquent for first degree murder. 705 ILCS 405/5-750(3) (West 2008). At the September 2010 resentencing hearing, the trial court did state respondent was "temporarily committed" to the Department for evaluation purposes. As set forth in the written judgment order, the court ordered respondent to the Department for an indeterminate period of time but with a review on December 14, 2010. However inartfully stated, the court was exercising its authority to review Department commitments and not entering a "temporary" commitment order. See *In re Justin L.V.*, 377 Ill. App. 3d 1073, 1085-87, 882 N.E.2d 621, 631-33 (2007) (trial court's order sentencing juvenile to Department with return hearing was not for "evaluation" but for indeterminate term and the return hearing was pursuant to court's reviewing authority under the Juvenile Act). "Where the court's oral and written orders are arguably inconsistent, and the written order is consistent with the court's intent, the written order will be enforced." *Justin L.V.*, 377 Ill. App. 3d at 1086, 882 N.E.2d at 632. The State's argument is further belied by the fact the court awarded respondent sentence credit while expressly denying it for the Treatment Program period. As the court sentenced respondent to the Department for an indeterminate time, as stated in the written judgment order, and he appeals from a lack of sentencing credit granted in that September 2010 order, we will address his sentencing credit claims.

¶ 36                  c. Juvenile Impact Incarceration Program

¶ 37       The State argues respondent must show the Treatment Program was not a "county juvenile impact incarceration program." We are not persuaded. Respondent's May 2009 probation order does not state he was found eligible for this program. See 55 ILCS 5/3-6039(b)(6) (West 2008) (requiring the order to state the juvenile was approved for placement in the program); see also 55 ILCS 5/3-6039(c) (West 2008) (including mandatory activities such as "mandatory physical training and labor, military formation and drills"). Further, it is unclear how the Treatment Program's status as an impact program would not entitle respondent to sentencing credit. See 55 ILCS 5/3-6039(a) (West 2008) ("[T]he delinquent minor's detention shall be reduced to time considered served upon certification to the court *** that the delinquent minor has successfully completed the program.").

¶ 38              3. *The Juvenile Act Sentencing Credit Requirements*

¶ 39       While the Juvenile Act expressly addresses sentencing credit for juveniles placed in "detention" (705 ILCS 405/5-710(1)(a)(v), (1)(b) (West 2008)), the supreme court has applied the broader adult sentencing credit requirements of section 5-8-7(b) of the Unified

Code to juveniles (*J.T.*, 221 Ill. 2d at 352, 851 N.E.2d at 9). This section has been recodified as section 5-4.5-100(b) (Pub. Act 95-1052, § 95 (eff. July 1, 2009) (repealing section 5-8-7 and adding section 5-4.5-100 of the Unified Code)). A juvenile who is committed to the Department for an indeterminate term is entitled to predisposition sentencing credit "for any part of a day for which he spent some time in custody." *In re Rakim V.*, 398 Ill. App. 3d 1057, 1059, 925 N.E.2d 339, 341 (2010); *J.T.*, 221 Ill. 2d at 353, 851 N.E.2d at 9-10; see also *In re Jabari C.*, 2011 IL App (4th) 100295, ¶ 35, 962 N.E.2d 8 (juvenile entitled to sentencing credit for day of arrest although not admitted to detention center). As respondent is entitled to credit for any time spent "in custody" as a condition of probation (*People v. Scheib*, 76 Ill. 2d 244, 251, 390 N.E.2d 872, 875 (1979); *People v. Dieu*, 298 Ill. App. 3d 245, 250, 698 N.E.2d 663, 666 (1998)), the fact the trial court ordered respondent to complete the Treatment Program as a condition of probation under section 5-715(2)(e) of the Juvenile Act (705 ILCS 405/5-715(2)(e) (West 2008)) does not affect our analysis of whether he is entitled to sentencing credit.

¶ 40    Section 5-4.5-100(b) of the Unified Code, recodified from section 5-8-7 of the Unified Code during the pendency of respondent's proceedings, provides, in pertinent part:

"[An] offender shall be given credit on the determinate sentence or maximum term and the minimum period of imprisonment *for time spent in custody as a result of the offense for which the sentence was imposed* ***. Except when prohibited by subsection (d), the trial court may give credit to the defendant for time spent in home detention, or when the defendant has been confined for psychiatric or substance abuse treatment prior to judgment, if the court finds that the detention or confinement was custodial." (Emphasis added.) 730 ILCS 5/5-4.5-100(b) (West 2010).

¶ 41    Based on prior precedent and section 5-4.5-100(b) of the Unified Code, we need not determine whether the Treatment Program qualifies as "detention" for section 7-710(a)(v) of the Juvenile Act as respondent urges. We need only determine if this program qualifies as "custody" for sentencing credit purposes.

¶ 42                                    a. Custody

¶ 43    The Illinois Supreme Court has defined "custody" for purposes of sentencing credit as "the legal duty to submit" to legal authority and not actual physical confinement. *Beachem*, 229 Ill. 2d at 252, 890 N.E.2d at 524; *Jabari C.*, 2011 IL App (4th) 100295, ¶¶ 34-35, 962 N.E.2d 8 (holding juvenile had a " 'legal duty to submit' to the control of the arresting officer" and was entitled to sentencing credit). In *Beachem*, the supreme court held the defendant was in custody for presentencing credit purposes where he was assigned to the Cook County Sheriff's Day Reporting Center program. *Beachem*, 229 Ill. 2d at 239, 253, 890 N.E.2d at 517, 524. The court stated the plain language definition of custody is "very expansive" and "may encompass varying degrees of state control." *Beachem*, 229 Ill. 2d at 245, 890 N.E.2d at 520. Finding the sentencing credit statute ambiguous, the court examined prior cases to conclude it is the "legal duty to submit" that defines a defendant's custodial status for credit purposes. *Beachem*, 229 Ill. 2d at 252-53, 890 N.E.2d at 524. The court noted the defendant "had a legal duty to submit to [the sheriff's] authority at any time and

for any reason" as defendant had "no right to be in the Program and had no recourse under the statutes of this state if the sheriff decided to reincarcerate him, or even to terminate the entire Program and reincarcerate all the participants." *Beachem*, 229 Ill. 2d at 253, 890 N.E.2d at 524. Further, the *Beachem* court noted even if physical confinement was required to constitute custody, Beachem was subject to limited confinement because (1) services were provided at the discretion of the sheriff; (2) defendant was not free to come and go as he pleased; (3) defendant was not free to structure his day as he saw fit; (4) defendant was obligated to report at an established time and participate in a state-run program; and (5) defendant could not decline to attend the program. *Beachem*, 229 Ill. 2d at 253, 890 N.E.2d at 524-25. Additionally, the court found the fact defendant's failure to report to the program could result in an escape prosecution supported its conclusion. *Beachem*, 229 Ill. 2d at 254, 890 N.E.2d at 525. The court stated, " 'A defendant must necessarily be in "custody" while participating in these programs if he is to be held accountable for "escape" for failure to comply with the terms of the programs.' " *Beachem*, 229 Ill. 2d at 254, 890 N.E.2d at 525 (quoting *People v. Campa*, 217 Ill. 2d 243, 259, 840 N.E.2d 1157, 1168 (2005)).

¶ 44                      b. The Treatment Program and Sentencing Credit

¶ 45    Under the Treatment Program, respondent had a legal duty to submit to state authority. Respondent had a legal duty to submit to the Detention Center officers as evidenced by the following facts: (1) respondent was court-ordered to participate in this county-run program; (2) he could be held longer than the scheduled 90-day period, here 117 days, at the discretion of Detention Center officials; (3) he was subject to solitary confinement for policy violations (respondent was subject to a 24-hour confinement with at least eight shorter confinements); (4) he was subject to strip searches upon return from home visits; (5) his freedom of movement was restricted by locked external and internal doors (including his bedroom door) throughout the Detention Center; (6) he was subject to the same policies and conditions as Detention Center residents (who are entitled to sentencing credit); and (7) he resided in the Detention Center completely integrated with Detention Center residents, wearing the same blue uniforms, attending school classes and eating side-by-side with Detention Center residents. See also *People v. Ramos*, 138 Ill. 2d 152, 159, 561 N.E.2d 643, 647 (1990) (supreme court noting characteristics of institutional confinement include regimented structure, surveillance, and lack of privacy). That Treatment Program residents receive certain privileges, such as cooking, cleaning, unloading trucks, and occasional outings, does not change our analysis. The record shows Treatment Program residents are still restrained within the Detention Center while performing these chores or under a detention officer's authority while on "outings." Further, we need not determine whether a "home visit" could remove a Treatment Program resident from "custody" as the record shows home visits are first for 6 to 8 hours and then for 12 hours; we can determine the two home visits respondent received would place him in "custody" for some period of that day he received a home visit. While physical confinement is not required for "custody" for sentencing credit purposes, several facts further support our determination respondent had a legal duty to submit to state authority: (1) this program is housed inside the Adams County Detention Center and (2) Treatment Program residents are under the state's physical control.

¶ 46        As discussed in *In re Darius L.*, 2012 IL App (4th) 120035, ¶ 39, prosecutability for escape (720 ILCS 5/31-6(b) (West 2010)) is not a necessary component of "custody" for sentencing credit purposes. Further, the record shows respondent could have been held responsible if he chose to leave or escape the Treatment Program, especially since the record shows he was placed in solitary confinement on more than one occasion for other infractions of the rules. As such, these repercussions support our conclusion respondent had a "legal duty to submit" to state authority while at the Treatment Program.

¶ 47                                C. Validity of Treatment Program

¶ 48        Respondent urges us to find the Treatment Program and its 90-day scheduled length, which actually was 117 days for respondent, is in conflict with the 30-day detention limitation in the Juvenile Act (705 ILCS 405/5-710(1)(a)(v) (West 2008)). Respondent appears to assert we need to find the Treatment Program is "detention" (see 705 ILCS 405/5-710(1)(a)(v) (West 2008) ("A minor shall not be deprived of credit for time spent in detention ***."); 705 ILCS 405/5-105(5) (West 2008) (definition)) to determine he is entitled to sentencing credit, but under *Rakim V.* and *Jabari C.*, we need only determine if the Treatment Program is "custody." Our determination respondent is entitled to sentencing credit upon commitment to the Department does not require us to determine whether this 90-day Treatment Program order in fact violates the 30-day limitation of section 5-710(1)(a)(v) of the Juvenile Act, as we are not called upon to determine whether it is "detention" for purposes of the Juvenile Act but merely "custody." See *Campa*, 217 Ill. 2d at 270, 840 N.E.2d at 1174 ("A court of review 'also ordinarily will not consider issues where they are not essential to the disposition of the cause or where the result will not be affected regardless of how the issues are decided.' " (quoting *Barth v. Reagan*, 139 Ill. 2d 399, 419, 564 N.E.2d 1196, 1205 (1990))). While it appears legitimate questions can be raised about whether this "treatment program" is in fact unauthorized detention beyond the 30 days allowed by the Juvenile Act, we conclude we are without jurisdiction to review whether the May 2009 probation order exceeds statutory authority on review of respondent's September 2009 sentence imposed after probation revocation.

¶ 49                                D. Respondent's Credits

¶ 50        Respondent argues he is entitled to credit for time spent in the Treatment Program from May 18, 2009, to September 11, 2009. As we agree the Treatment Program is "custody" for sentencing credit purposes, respondent is entitled to an additional 117 days credit. We further note respondent was committed to the Department from September 22, 2010, to December 13, 2010, or 83 days, and received 159 days' credit toward his commitment. As a result of his participation in the Treatment Program, respondent has been in "custody" for 359 days on this Class A misdemeanor.

¶ 51                                III. CONCLUSION

¶ 52        For the foregoing reasons, we reverse the denial of sentence credit, affirm the remainder of the judgment, and remand with directions to accord respondent minor an additional 117

days' sentencing credit.

¶ 53      Affirmed in part and reversed in part; cause remanded with directions.