2015 IL App (4th) 140802
NO. 4-14-0802

FILED
February 9, 2015
Carla Bender
4th District Appellate
Court, IL

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| In re: AUSTIN S., a Minor, | ) | Appeal from |
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Circuit Court of |
|      Petitioner-Appellee, | ) | Adams County |
|      v. | ) | No. 13JD14 |
| AUSTIN S., | ) | |
|      Respondent-Appellant. | ) | Honorable |
| | ) | John C. Wooleyhan, |
| | ) | Judge Presiding. |

JUSTICE STEIGMANN delivered the judgment of the court, with opinion.
Presiding Justice Pope and Justice Appleton concurred in the judgment and opinion.

**OPINION**

¶ 1        In September 2013, the trial court adjudicated respondent, Austin S. (born October 4, 1997), a delinquent minor under the Juvenile Court Act of 1987 (Juvenile Act) (705 ILCS 405/1-1 to 7-1 (West 2012)) based on respondent's admission that he possessed drug paraphernalia in violation of section 3.5 of the Drug Paraphernalia Control Act (720 ILCS 600/3.5 (West 2012)).  In November 2013, the court sentenced respondent to one year of probation.

¶ 2        In May 2014, the State filed a second supplemental petition, alleging, in part, that respondent violated the terms of his probation by (1) leaving his foster home and (2) not attending school.  At a June 2014 hearing, respondent admitted that the State's allegations were true.  Thereafter, the trial court modified respondent's probation by adding the condition that he successfully complete the Adams County Juvenile Detention Center Treatment Program (Treatment Program).  In September 2014, the court denied respondent's motion to reconsider his sentence.

¶ 3    Respondent appeals, arguing that the trial court's order mandating that he success-fully complete the Treatment Program is void because it violates the 30-day limitation for detention under section 5-710(1)(a)(v) of the Juvenile Act (705 ILCS 405/5-710(1)(a)(v) (West 2012)).  We agree and reverse.

¶ 4                              I.  BACKGROUND

¶ 5    In March 2013, the State filed an amended petition for adjudication of wardship, alleging that respondent was a delinquent minor as defined by section 5-105(3) of the Juvenile Act (705 ILCS 405/5-105(3) (West 2012)) in that he committed the offenses of (1) burglary (counts I, II, and IV) (720 ILCS 5/19-1(a) (West 2012)) and (2) theft (counts III and V) (720 ILCS 5/16-1(a)(4) (West 2012)).  The State's petition noted that (1) respondent was not in temporary custody and (2) the State was not requesting a detention hearing.

¶ 6    In September 2013, the State filed a motion for detention.  At a hearing conducted the next day, the trial court found that respondent did not have a suitable noncustodial placement.  As a result, the court granted the State's motion, finding that an immediate and urgent necessity required respondent's placement in the Adams County Detention Center (Detention Center) until further notice.

¶ 7    Later that month, the State filed a second amended petition for adjudication of wardship, adding count VI to its March 2013 amended wardship petition.  Count VI alleged that in December 2012, respondent committed the offense of possession of drug paraphernalia by possessing a pipe commonly used to ingest cannabis.  At a hearing held that same day, the State informed the trial court that respondent agreed to admit count VI was true.  In exchange for respondent's admission, the State withdrew the remaining five counts.  After accepting respondent's admission, the court continued the matter for an October 2013 sentencing hearing.  Thereaf-

ter, respondent requested his release from the Detention Center. After considering testimony that respondent's adoptive parents could no longer care for respondent, the court denied respondent's request, ruling that respondent "is going to be continued at the Detention Center pending the sentencing hearing *** scheduled for October 29[, 2013].

¶ 8     At the October 2013 sentencing hearing, respondent's counsel, noting that respondent had been confined in the Detention Center for over 30 days, requested a continuance to present evidence that the Treatment Program was "detention" for purposes of the 30-day limit imposed by section 5-710(1)(a)(v) of the Juvenile Act. Quoting from this court's decision in *In re Christopher P.*, 2012 IL App (4th) 100902, ¶ 48, 976 N.E.2d 1095, counsel noted that " 'legitimate questions' " existed regarding whether the Treatment Program was " 'unauthorized detention beyond the 30 days allowed by the Juvenile Act.' " The State responded that the Treatment Program was properly classified as custodial, but "in the absence of any alternative placement and given [respondent's] need," the State intended to recommend that respondent complete the Treatment Program. Thereafter, the court granted counsel a continuance but ordered respondent to remain in the Detention Center.

¶ 9     At a November 2013 hearing, the trial court first entered an order in Adams County case No. 13-J-5, releasing respondent from detention and granting the Department of Children and Family Services (DCFS) temporary custody of respondent until "some other more permanent placement can be made." The court then resumed respondent's sentencing hearing in the instant case. Following argument, the court adjudicated respondent a ward of the court and sentenced him to one year of probation.

¶ 10     In May 2014, the State filed a second supplemental petition, alleging, in part, that respondent violated the terms of his probation by (1) leaving his foster home and (2) not attend-

ing school for several days during that month. At a detention hearing held five days later, respondent's probation officer, Rollie Thomas, testified that on May 26, 2014, police detained respondent pursuant to a warrant. After testifying about respondent's probationary violations, Thomas acknowledged that the parental rights of respondent's adoptive parents had been terminated. Because DCFS was not able to place respondent back into foster care at that time, Thomas recommended that respondent remain in the Detention Center pending further proceedings. Following argument, the trial court found probable cause existed to believe that respondent had violated the terms of his probation as the State alleged. Thereafter, the court entered an order, finding that an immediate and urgent necessity required respondent's temporary placement in the Detention Center.

¶ 11        At a June 2, 2014, hearing on the State's second supplemental petition, the State informed the trial court that respondent agreed to admit that he violated his probation by (1) leaving his foster home and (2) not attending school. After accepting respondent's admissions, the court considered a request from respondent's counsel to "enter an order today to allow [respondent] to participate in the Treatment Program if there is space available." The court's June 2014 order stated that respondent "may enter into *** [the] Treatment Program prior to sentencing." The court then continued the matter for sentencing.

¶ 12        Following argument at a July 10, 2014, sentencing hearing, the trial court modified respondent's probation by adding the condition that he "successfully complete the *** Treatment Program." In August 2014, respondent filed a motion to reconsider his sentence, arguing that the court abused its discretion because the Treatment Program "is detention that is not authorized by sections 5-710 or 5-715 of the [Juvenile Act]." See 705 ILCS 405/5-710, 5-715 (West 2012).

¶ 13 At a September 9, 2014, hearing on respondent's motion to reconsider his sentence, Melanie Kroeger, a juvenile-detention officer at the Detention Center, testified as follows.

¶ 14 The Treatment Program is located within the Detention Center and is "designed to [last] about 90 days." Kroeger explained that the program's intent is to provide skills so that participants can achieve sufficient progress on assigned goals, which Kroeger classified as a "B level" of proficiency. Once a participant obtains B-level proficiency, he or she must also complete two or three "home visits" to successfully complete the Treatment Program. Kroeger noted that she has observed some participants remain in the program longer than the 90-day minimum and, in some cases, longer than six months because of failure to make sufficient progress.

¶ 15 Treatment Program participants are supposed to meet weekly for up to one hour with their assigned coordinator, who provides guidance and assesses progress. Kroeger was respondent's coordinator but acknowledged that she did not always meet with respondent on a weekly basis. Aside from her initial basic training to become a detention officer and a 10-page "informal *** packet" that outlined the overall parameters of the Treatment Program, Kroeger had not received any specialized instruction or required any certifications to become a coordinator. Participants can also meet with a therapist at the Detention Center.

¶ 16 Respondent would leave the Detention Center to receive biweekly substance-abuse counseling. However, when travelling, respondent was restrained with shackles and cuffs in a locked vehicle. Upon his return, respondent was required to submit to a "strip search," in which he had to remove all his clothing so that a detention officer could inspect his naked body. Once inside the Detention Center, respondent was treated no differently than a detainee in that he was confined to his room and required approval from a detention officer to proceed through any door. An exception applied if Treatment Program participants reached B-level status in that they

- 5 -

were not shackled when traveling but had to submit to a strip search after returning from a home visit.

¶ 17    Kroeger described respondent's room as a "typical [Department of Corrections] regulation cell, [which] has a toilet, a mat, two blankets, a sheet and a pillowcase." Individual rooms are located within "pods" of 10 rooms that are monitored by detention officers and are locked at night. When approved by the staff, respondent had access to outdoor and indoor recreational areas that were both video monitored. Kroeger confirmed that Treatment Program participants and detainees share the same environment while housed in the Detention Center.

¶ 18    Kroeger acknowledged that participants who have obtained B-level status can earn the privilege of "outings." Kroeger explained that "[a]n outing is typically when a staff member has deemed that [participant] trustworthy to take out in the community" for either a meal or recreational activity.

¶ 19    Following argument, the trial court denied respondent's motion to reconsider his sentence.

¶ 20    This appeal followed.

¶ 21                    II. ANALYSIS

¶ 22                    A. Jurisdiction

¶ 23    Prior to addressing the merits of respondent's argument, we first consider the State's argument that this court lacks jurisdiction. See *In re Marriage of Sheth*, 2014 IL App (1st) 132611, ¶ 20, ___ N.E.3d ___ (a reviewing court must first determine if it has jurisdiction before proceeding in a cause of action).

¶ 24    The State argues that this court lacks jurisdiction because respondent failed to appeal the trial court's June, 2, 2014, order that sentenced him to successfully complete the Treat-

ment Program.  We disagree because the record does not support the State's claim.

¶ 25    On June 2, 2014, the trial court accepted respondent's admission that he violated specific terms of his probation as the State alleged in its May 2014 second supplemental petition. Thereafter, the court continued the matter for sentencing.  Contrary to the State's claim, at the July 10, 2014, sentencing hearing, the court modified respondent's probation by adding the condition that he successfully complete the Treatment Program.  On September 9, 2014, the court denied respondent's motion to reconsider his sentence.  In respondent's notice of appeal to this court, he timely appeals the court's July 10, 2014, and September 9, 2014, orders.  Accordingly, we reject the State's argument and conclude that this court has jurisdiction to consider the sentencing issue respondent raises in this appeal.

¶ 26    B. Mootness

¶ 27    The State also argues that because the trial court's order sentencing respondent to one year of probation expired on November 6, 2014, respondent's sentencing claim is moot.  Respondent acknowledges that his argument to this court is moot, but he urges this court to consider his claim under the public interest exception to the mootness doctrine.

¶ 28    "It is a basic tenet of justiciability that reviewing courts will not decide moot or abstract questions or render advisory opinions." *In re J.T.*, 221 Ill. 2d 338, 349, 851 N.E.2d 1, 7 (2006).  "An appeal is considered moot where it presents no actual controversy or where the issues involved in the trial court no longer exist because intervening events have rendered it impossible for the reviewing court to grant effectual relief to the complaining party." *Id.* at 349-50, 851 N.E.2d at 7-8.  "This court will address a moot question only if one of the exceptions to the mootness doctrine applies." *Christopher P.*, 2012 IL App (4th) 100902, ¶ 19, 976 N.E.2d 1095.

¶ 29    "The public interest exception allows a court to consider an otherwise moot case

- 7 -

when (1) the question presented is of a public nature; (2) there is a need for an authoritative determination for the future guidance of public officers; and (3) there is a likelihood of future recurrence of the question." *In re Alfred H.H.*, 233 Ill. 2d 345, 355, 910 N.E.2d 74, 80 (2009). Application of the public interest exception requires a clear showing of each element. *Id*. at 355-56, 910 N.E.2d at 80.

¶ 30     We conclude that the first element is satisfied because it involves a question pertaining to the permissible length that a minor can be detained, which implicates a minor's liberty interest. See *J.T.*, 221 Ill. 2d at 350-51, 851 N.E.2d at 8 (the question of how long a minor will remain incarcerated or subject to parole restrictions or the custodianship of the Department of Corrections is a question of public importance).

¶ 31     As to the second element—the need for an authoritative determination for the future guidance of public officers—respondent contends that authoritative guidance is particularly warranted because the issue of whether the Treatment Program constitutes detention as contemplated by section 5-710(1)(a)(v) of the Juvenile Act is a matter of first impression. We agree, noting that the need for an authoritative determination on the liberty interests of minors is of paramount importance. *In re Shelby R.*, 2013 IL 114994, ¶ 22, 995 N.E.2d 990.

¶ 32     We also conclude that the third element is satisfied because this issue is likely to recur in that minors will undoubtedly continue to be sentenced to the Treatment Program at issue in this case. Indeed, parties have previously argued this very issue to this court, but we declined to reach the merits due to lack of jurisdiction. See *In re Darius L.*, 2012 IL App (4th) 120035, ¶ 45, 976 N.E.2d 1109; *Christopher P.*, 2012 IL App (4th) 100902, ¶ 48, 976 N.E.2d 1095.

¶ 33     Accordingly, because we conclude that respondent's moot sentencing issue satisfies the criteria of the public interest exception, we choose to consider it on the merits.

¶ 34                                C. Respondent's Sentencing Claim

¶ 35            Respondent argues that the trial court's sentence ordering him to successfully

complete the Treatment Program is void because it violates the 30-day limitation for detention

under section 5-710(1)(a)(v) of the Juvenile Act.  We agree.

¶ 36                           1. *The Applicable Sections of the Juvenile Act*

¶ 37            Section 5-710 of the Juvenile Act, entitled "Kinds of sentencing orders," provides

a listing of the types of sentences a trial court can impose for a ward of the court who is adjudi-

cated guilty of an offense.  705 ILCS 405/5-710 (West 2012).  Section 5-710(1)(a)(v) of the Ju-

venile Act authorizes a court to place a minor "in detention for a period not to exceed 30 days."

705 ILCS 405/5-710(1)(a)(v) (West 2012).

¶ 38            Section 5-105(5) of the Juvenile Act, defines "detention" as follows:

             "(5) 'Detention' means the temporary care of a minor who is

       alleged to be or has been adjudicated delinquent and who requires

       secure custody for the minor's own protection or the community's

       protection in a facility designed to physically restrict the minor's

       movements, pending disposition by the court or execution of an

       order of the court for placement or commitment.  Design features

       that physically restrict movement include, but are not limited to,

       locked rooms and the secure handcuffing of a minor to a rail or

       other stationary object."  705 ILCS 405/5-105(5) (West 2012).

¶ 39                           2. *This Court's Decision in Christopher P.*

¶ 40            In *Christopher P.*, 2012 IL App (4th) 100902, ¶ 50, 976 N.E.2d 1095, this court

concluded that time spent in the Treatment Program—the same Treatment Program that is at is-

sue in this case—was properly classified as "custody" for sentencing credit purposes. In support of our conclusion, we summarized the following characteristics of the Treatment Program:

"Under the Treatment Program, respondent had a legal duty to submit to state authority. Respondent had a legal duty to submit to the Detention Center officers as evidenced by the following facts: (1) respondent was court-ordered to participate in this county-run program; (2) he could be held longer than the scheduled 90-day period, here 117 days, at the discretion of Detention Center officials; (3) he was subject to solitary confinement for policy violations (respondent was subject to a 24-hour confinement with at least eight shorter confinements); (4) he was subject to strip searches upon return from home visits; (5) his freedom of movement was restricted by locked external and internal doors (including his bedroom door) throughout the Detention Center; (6) he was subject to the same policies and conditions as Detention Center residents ***; and (7) he resided in the Detention Center completely integrated with Detention Center residents, wearing the same blue uniforms, attending school classes and eating side-by-side with Detention Center residents. See also *People v. Ramos*, 138 Ill. 2d 152, 159, 561 N.E.2d 643, 647 (1990) (supreme court noting characteristics of institutional confinement include regimented structure, surveillance, and lack of privacy). That Treatment Program residents receive certain privileges, such as cooking, clean-

ing, unloading trucks, and occasional outings, does not change our analysis. The record shows Treatment Program residents are still restrained within the Detention Center while performing these chores or under a detention officer's authority while on 'outings.' Further, we need not determine whether a 'home visit' could remove a Treatment Program resident from 'custody' as the record shows home visits are first for 6 to 8 hours and then for 12 hours; we can determine the two home visits respondent received would place him in 'custody' for some period of that day he received a home visit. While physical confinement is not required for 'custody' for sentencing credit purposes, several facts further support our determination respondent had a legal duty to submit to state authority: (1) this program is housed inside the Adams County Detention Center and (2) Treatment Program residents are under the state's physical control." *Id.* ¶ 45, 976 N.E.2d 1095.

¶ 41     3. *The Treatment Program and the Detention Limits Under the Juvenile Court Act*

¶ 42     We first note that in its brief to this court, the State does not specifically address respondent's sentencing claim—that is, the State does not argue that the Treatment Program, as described by Kroeger, fails to satisfy the statutory definition of "detention" provided by section 5-105(5) of the Juvenile Act. Instead, the State urges this court to conclude that (1) we lack jurisdiction or (2) respondent's claim is moot. We have already addressed and rejected both of these contentions.

¶ 43     Two years earlier, in *Christopher P.*, we observed that "legitimate questions can

be raised about whether this 'treatment program' is in fact unauthorized detention beyond the 30 days allowed by the Juvenile Act." *Id.* ¶ 48, 976 N.E.2d 1095.  We expected our conclusion in *Christopher P.*—that is, that the Treatment Program is "custody" for sentencing credit purposes—would have alerted the proper authorities either to alter the length of the Treatment Program to comply with the timing limitations of section 5-710(1)(a)(v) of the Juvenile Act or to revise the Treatment Program to avoid application of the statutory definition of detention.  Kroeger's testimony confirms, however, that no such corrective action has been taken.  Her account of the Treatment Program is substantially similar to our aforementioned summary in *Christopher P.*

¶ 44       We conclude that the Treatment Program—as described in this case—satisfies the definition of detention provided by section 5-105(5) of the Juvenile Act.  Therefore, the minimum 90-day length of the Treatment Program violates the timing limitations of section 5-710(1)(a)(v) of the Juvenile Act.  Moreover, we note the Treatment Program at issue, given its regimented structure, surveillance, and lack of privacy, is no different than any other juvenile-detention facility.  To say that sentencing a juvenile to complete the Treatment Program is not a sentence to detention is nonsensical.  The Treatment Program is premised on detention first, with some perks perhaps to follow.

¶ 45       Accordingly, because we conclude that the Treatment Program is detention, the trial court's July 10, 2014, sentencing order is void because it violates the 30-day limitation for detention under section 5-710(1)(a)(v) of the Juvenile Act.

¶ 46                                III.  CONCLUSION

¶ 47       For the reasons stated, we reverse the trial court's July 10, 2014, sentencing order.

¶ 48       Reversed.

- 12 -